No. 46,084

RICHARD GAWITH (Claimant) *Appellant*, v. GAGE'S PLUMBING AND HEATING CO., INC. (Respondent) and ALLIANCE MUTUAL CASUALTY COMPANY (Insurance Carrier), *Appellees*.

(476 P. 2d 966)

Opinion filed November 7, 1970.

*George E. McCullough*, of McCullough, Parker, Wareheim, LaBunker and Rose, of Topeka, argued the cause and was on the brief for the appellant.

*James P. Mize,* of Clark, Mize, Graves, Linville and Miller, Chartered, of Salina, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: The sole question involved in this workmen's compensation action is whether the provisions of K. S. A. 1967 Supp. 44-556, which authorize the district court in a workmen's compensation proceeding to try the case *de novo* on the record and to render such judgment thereon as justice may require, violate the constitutional separation of powers doctrine.

Richard Gawith (claimant-appellant) sustained an accidental injury on April 1, 1968, which arose out of and in the course of his employment with the respondent, Gage's Plumbing and Heating Co., Inc. (appellee).

The injury was caused when a stud gun accidentally discharged and drove a bolt through the claimant's body entering into the lower part of the abdomen and leaving the body about three-eighths of an inch from the spine. The claimant was off work approximately six weeks and returned to his regular occupation where he worked steadily up to the time of the hearing. The testimony of the various doctors was not entirely consistent. The examiner, after hearing the evidence, entered an award of ten percent permanent partial disability, among other things not here material. Upon review the director adopted the examiner's award. On appeal the district court of Saline County, Kansas, determined the appellate procedure outlined in K. S. A. 1967 Supp. 44-556, and the interpretations heretofore placed thereon by the Supreme Court, did not violate the separation of powers doctrine of the constitutions of the state of Kansas and the United States, and substituted its judgment reducing the award to five percent permanent partial disability, but in all other respects affirming the director's award.

In his brief counsel for the claimant states:

". . . It is from this substitution of the judgment of the District Court, for that of an administrative agency, without the finding of arbitrary, capricious or fraudulent acts or finding that the Director did not act within his jurisdiction or by not making a finding as to whether the evidence did or did not support the Director's finding, that the appellant [claimant] appeals."

The portion of K. S. A. 1967 Supp. 44-556 material to this appeal provides as follows:

"Any party to the proceedings may appeal from any and all decisions, findings, awards or rulings of the director to the district court of the county where the cause of action arose upon questions of law and fact as presented and shown by a transcript of the evidence and proceedings as presented, had and introduced before the director. Such appeal shall have precedence over all other hearings except those of like character, and shall be heard not later than the first term of said court after the appeal has been perfected.

"*On any such appeal the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the director as justice may require. . . .*" (Emphasis added.)

The above quoted portion of the statute was enacted by the legislature in 1927 and has remained unchanged in the forty-three years since it was enacted, except that the word "director" has been substituted for the word "commissioner" as originally enacted.

Throughout the intervening years since 1927 this court has consistently held this statute to mean exactly what it says—that the district court has plenary power and jurisdiction to review the record and "grant or refuse compensation, or to increase or diminish any award of the director as justice may require."

Under the workmen's compensation act of 1927 the district court hears no additional evidence and sees no witnesses, but it has both the jurisdiction and the duty to make an independent adjudication as to the facts as well as the law; and except as otherwise bound by the statute itself, it may increase or diminish any award of the director (then commissioner) as justice may require. (*Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818.)

In *Coe v. Koontz*, 129 Kan. 581, 283 Pac. 487, the court said:

". . . Our statutes, above cited, relating to workmen's compensation, provide an elaborate plan and a complete procedure, as was quite fully discussed in *Norman v. Consolidated Cement Co.*, 127 Kan. 643, 274 Pac. 233. In controverted matters between claimants for compensation and employers the statute provides for the taking of all of the testimony before a commissioner of compensation. The person hearing this evidence may, or may not, be a lawyer. The party who feels aggrieved by his decision, and desiring the evidence to be considered by a jurist, may appeal to the district court where the hearing is had on 'questions of law and fact.' That is about as complete a hearing as can be had in any case. The findings and judgment of the district court are not limited by the fact of whether there was or was not fraud, misconduct or unfairness on the part of the commissioner of compensation. . . ." (p. 583.)

The grant of power by the legislature to the district court in

44-556, *supra,* as above quoted, includes the right to weigh the evidence in compensation cases. (*Burk v. American Dist. Tel. Co.,* 160 Kan. 519, 163 P. 2d 402.)

Other decisions bearing upon the statute in question are *Fougnie v. Wilbert & Schreeb Coal Co.,* 130 Kan. 410, 286 Pac. 396; *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456; *Attebery v. Griffin Construction Co.,* 181 Kan. 450, 312 P. 2d 598; *Place v. Falcon Seaboard Drilling Co.,* 186 Kan. 523, 350 P. 2d 788; and *Fisher v. Rhoades Construction Co.,* 188 Kan. 792, 365 P. 2d 1101.

In a number of decisions this court has characterized the jurisdiction and power of the district court on such appeal as a "trial *de novo* on the record." (*Davis v. Haren & Laughlin Construction Co.,* 184 Kan. 820, 339 P. 2d 41; *Wilson v. Santa Fe Trail Transportation Co.,* 185 Kan. 725, 347 P. 2d 235; *Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796; and *Landes v. Smith,* 189 Kan. 229, 368 P. 2d 302.)

The claimant herein would have us overrule this rather substantial body of law extending over a period of nearly half a century on the ground that it violates the constitutional doctrine of separation of powers. He cites to this court no single decision to support his position, but argues in a commendable brief that the Kansas workmen's compensation act is an administrative act which designates the director of workmen's compensation as the director of that administrative body. (Citing K. S. A. 74-710.) He further calls our attention to the fact that the legislature has delegated legislative authority to the director of workmen's compensation by granting him the power to make rules and regulations which have the effect of a statute when filed with the revisor of statutes. (Citing K. S. A. 44-573.)

Our decisions clearly show the functions of the workmen's compensation director under the provisions of the workmen's compensation act are those of an administrative agency vested with some powers that are quasi-judicial. (*Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233.)

The claimant relies on *Fougnie v. Wilbert & Schreeb Coal Co.,* supra, for the proposition that a workmen's compensation proceeding is not a lawsuit at all. The court there said:

". . . But there is nothing in the statute which contemplates that the trial court is authorized to hear further evidence or try the proceedings *de novo.*

Touching the legal query that if the district court cannot go into the real facts of a case and grant a hearing *de novo* the statute may not be constitutional, it should be a sufficient answer to remind counsel that proceedings under the workmen's compensation act are not in a strict sense a lawsuit at all. They are special proceedings essentially contractional in character, sanctioned and encouraged by statute, but not compulsorily imposed on the parties. The workman and his employer may decline to adopt the terms of the compensation act to govern their relationship, and may adhere to such rights and remedies as are accorded them under the common law with its constitutional and statutory modifications. . . ." (p. 413.)

Apparently the claimant feels he is treading on thin ice to raise the constitutional question in this workmen's compensation proceeding, because he argues the many attempts to invalidate the Kansas workmen's compensation act on constitutional questions were all based on an assertion of individual rights as distinguished from federal or state rights. It has consistently been held that as to individual rights constitutional questions may not be raised concerning the workmen's compensation act because it is contractual in nature. (*Fougnie v. Wilbert & Schreeb Coal Co.*, supra; and see K. S. A. 44-542 and 44-543.) Here, however, the claimant insists he may raise the constitutional question challenging the workmen's compensation act because he is asserting a federal or state right under the constitutional separation of powers doctrine.

Basically we are here confronted with a question of the district court's jurisdiction, even though it stems from a constitutional challenge. In the workmen's compensation act of 1927 the Supreme Court had no authority to entertain an appeal from the decision of the district court in a workmen's compensation matter, and it was held the Supreme Court was *without jurisdiction* to review the decision of the district court. (*Norman v. Consolidated Cement Co.*, supra.)

A resort to 44-556, *supra*, clearly demonstrates that we are here concerned with the authority of the district court to substitute its judgment for that of the workmen's compensation director. The challenge of such authority on a constitutional basis clearly presents a jurisdictional question.

Here the claimant is in good standing to raise the jurisdictional question. (See *Kelly v. Grimshaw*, 161 Kan. 253, 167 P. 2d 627; *Dick v. Drainage District No. 2*, 187 Kan. 520, 358 P. 2d 744; *Williams v. Board of County Commissioners*, 192 Kan. 548, 389 P. 2d 795; *Lira v. Billings*, 196 Kan. 726, 414 P. 2d 13; and 4 Davis, Administrative Law Treatise, § 29.09, pp. 163, 165.)

For a thorough discussion of the separation of powers doctrine originating from the federal and state constitutions, see *State, ex rel., v. State Office Building Commission,* 185 Kan. 563, 345 P. 2d 674.

The Kansas Supreme Court has almost universally applied this doctrine of separation of powers to various appeal statutes providing for appeals from purely administrative tribunals, ruling that the court may not substitute its judgment on questions of fact for that of an administrative tribunal. Recent cases defining the court's authority on appeal from decisions of purely administrative tribunals are: *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P. 2d 828; *Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239; *Lauber v. Firemen's Relief Association,* 202 Kan. 564, 451 P. 2d 488; *Goetz v. Board of Trustees,* 203 Kan. 340, 454 P. 2d 481; and *Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456.

The epitome of the claimant's argument is reflected in *Lauber v. Firemen's Relief Association,* supra. The claimant contends the district court on appeal in a workmen's compensation case has authority only to determine (1) whether the director acted fraudulently, arbitrarily or capriciously in his findings of fact; (2) whether the findings of fact in the director's award are supported by substantial competent evidence; and (3) whether the director's action was within the scope of his authority. This, he argues, has been the rule in appeals from administrative tribunals with the exception of the workmen's compensation director's office.

In *Rydd v. State Board of Health,* supra, it was said the rule for the review of decisions from administrative agencies or tribunals applies to all except those that are essentially judicial matters. On this premise the claimant argues if the award of the workmen's compensation director is essentially a judicial matter, so would be the award of the Firemen's Relief Association, citing *Lauber,* supra. In *Lauber* it was held the district court did not have enlarged jurisdiction, but only such limited jurisdiction as had previously been imposed by law for the review of purely administrative matters. The claimant contends the analogy is real.

In *Lauber,* supra, the Firemen's Relief Association of Salina, which administered the Firemen's Relief Fund, was said to be a nonprofit, corporate, public body whose duties were defined by statute to administer public funds which it held in trust. These funds were administered by the Firemen's Relief Association of Salina pursuant to

legislative mandate, and it was concluded the decisions of the association were administrative in nature. In *Lauber* the court said:

"Nowhere has the legislature in making provision for the Firemen's Relief Fund (K. S. A. 40-1701, *et seq.*) indicated what should be paid to firemen who are injured or physically disabled in the discharge of their duties as firemen. Where a workman is injured or killed in the course of his employment in industry workmen's compensation is provided under the workmen's compensation act. There, however, the compensation to be awarded an injured workman or his dependents is spelled out in some detail. . . .

"Here the Firemen's Relief Association contends the payment of relief to an injured or physically disabled fireman by reason of the discharge of his duties as a fireman is completely discretionary with the Association. Lauber, on the other hand, contends his right to relief is substantially equivalent to one's right in a tort action to recover damages for the negligent acts of another.

"As we construe 40-1707, *supra*, neither of these extremes was contemplated by the legislature; that is, if it be assumed the expression 'completely discretionary' is intended to mean the right to deny any relief whatever.

"In construing 40-1707, *supra*, to determine the meaning of 'relief' it is well to take into consideration other benefits made available to firemen by the legislature. The benefits provided in K. S. A. 13-14a09 are concerned with permanent disability benefits. When a fireman in the performance of his duties as a fireman is '*permanently injured or disabled*' 'so as to render him unfit for the performance of his duties' as a fireman, he is eligible for permanent disability benefits under the Firemen's Pension Fund. The Firemen's Relief Act (K. S. A. 40-1707) provides that all funds shall be held in trust and used for *the relief of firemen injured or physically disabled* in the discharge of their duties.

. . . . . . . . . . . . . . .

"We construe 'relief' as used by the legislature in 40-1707, *supra*, to mean the removal in whole or in part of the financial burden, hardship or distress of a fireman, his widow or dependents, resulting from injury or physical disability to a fireman in the discharge of his duties. *Within reasonable limits, depending on the funds available and the circumstances of financial need resulting from such injury or physical disability to a fireman, the amount of financial assistance to be paid as relief to such fireman, his widow or dependents, falls within the discretionary power of the Firemen's Relief Association to administer the fund.*" (pp. 577, 578.) (Emphasis added.)

Similarly, in *Rydd v. State Board of Health*, supra, the administrative nature of the proceeding whereby licenses were granted by the state board of health to individuals for the operation of day care home for children was analyzed under the separation of powers doctrine, and it was held:

"By reason of the constitutional inhibition known as the separation of powers doctrine, the legislature may not impose upon the judiciary the function of a

trial *de novo* of action of an administrative agency in the sense of authorizing the court to substitute its judgment for that of the administrative agency in matters other than law or essentially judicial matters." (Syl. ¶ 4.)

Our decisions, however, cannot be construed to hold that *all* administrative agencies exercise essentially legislative and administrative functions.

This is illustrated in *Lira v. Billings,* 196 Kan. 726, 414 P. 2d 13, where the court said:

"It is clear the problem here is to determine just what function is placed upon the district court in this type of hearing. Is it legislative? If so, the statute must be held bad. If it is judicial or quasi-judicial, then the constitution presents no limitation for it provides the legislature can confer upon the district court whatever jurisdiction it may choose (Constitution, Article 3, Section 6).

"We state at the outset, and for reasons which should become apparent, that we limit this determination to appeals from suspension and revocation orders based on refusal to submit to chemical tests for blood alcohol content pursuant to K. S. A. 8-1001. The statute calls for a trial *de novo* with a further provision that the licensee has the right of trial by jury upon demand therefor. This statute has been interpreted by this court as meaning that the only issue before a district court on such an appeal is the reasonableness of the failure of the petitioner to submit to the chemical test (*Marbut v. Motor Vehicle Department,* 194 Kan. 620, 400 P. 2d 982).

"Thus there is a standard or guideline plainly present in the statute—*reasonableness* of the failure to submit to the chemical test—which must be kept in mind. We recognize that the discretion of a court is not to be substituted for the discretion of an administrative agency, and further, that the business of licensing is generally to be regarded as an administrative function (see *State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408), and we are not disposed to commit courts to the business of licensing. But here the discretion of those charged with administering the law in the first place is circumscribed by the statutory criterion that the failure to submit to the chemical test must be unreasonable before suspension or revocation is to be applied. Courts and juries deal constantly, in many ways, and have traditionally, with determining in retrospect whether the criterion of reasonableness has been met under the particular circumstances. The term *reasonableness* is one with a meaning well developed and familiar to courts, and courts and juries cannot be said to be lacking in qualification or expertise to make such determination as is here involved. Such determination does not involve the formulation of policy normally associated with the legislature. The legislative power was exercised when the legislature provided for a review in the district court, the particular scope of the review being within legislative competence so long as it is judicial in nature. The review provided is one appropriate for judicial determination. The statute does no more than empower the court, and the jury when called into play, upon consideration of the evidence, to determine the question of reasonableness of the refusal. The statute further prescribes that testimony be taken and an examination made into the facts. This necessarily calls for a

weighing of the evidence pro and con where controversy exists and a determination based on a preponderance thereof. Weighing evidence and determining questions of reasonableness have always been regarded as judicial functions. Everything considered, we believe and hold that the review provided is sufficiently judicial in character, and that the court and jury are not called upon to exercise legislative power in violation of the separation of powers' doctrine, under the specific facts presented in this case (see 2 Am. Jur. 2d, Administrative Law, § 581; 16 Am. Jur. 2d, Constitutional Law, § 222)." (pp. 730, 731.)

Basically, the point asserted by the claimant is that there is no valid ground for any distinction between the decisions rendered by one administrative agency and the determinations of all other administrative bodies; that all of the administrative rulings must be reviewed consistent with the limited scope of review applied by the judiciary to administrative rulings as indicated in *Lauber*.

Our examination of the authorities bearing on this point convinces us there is a basis for distinction between the functions of different administrative agencies. Many cases hold that some administrative bodies perform functions which are judicial or quasi-judicial, while other agencies perform essentially legislative or administrative functions.

Among the cases in Kansas and in other jurisdictions holding that an administrative body can exercise judicial or quasi-judicial powers are the workmen's compensation cases, where the administrative agency was created for the purpose of making awards to injured workmen under workmen's compensation or industrial insurance laws. Cases which have held that certain other administrative bodies perform essentially legislative or administrative functions include *Bodine v City of Overland Park*, supra; *Rydd v. State Board of Health*, supra; and *Lauber v. Firemen's Relief Association*, supra.

The report of the American Bar Association's special committee on administrative law, 58 A. B. A. Rep. 407, classified administrative agencies according to the nature of the particular function performed by each. The committee distinguished between functions and said:

"In general, it may be said that administrative law results from the reposing of what are essentially legislative or judicial functions (or both) in an official or board belonging to the executive branch of the government or in an independent official or board. . . ." (p. 410.)

It is apparent from the cases that a distinction is recognized between "legislative" and "judicial" functions performed by different

administrative officers or bodies, and that the scope of judicial review of the actions of administrative agencies does vary with the subject matter of the review or the function of the agency.

The remaining question is whether the determinations made by the workmen's compensation director under the Kansas workmen's compensation act are essentially legislative or administrative or are essentially judicial or quasi-judicial. If the functions performed by the director (and his examiners) are essentially legislative or administrative, under *Lauber* the district court did not have authority to review the director's decision on the facts and substitute its judgment for that of the director. But if the director's functions are essentially judicial, the statute under consideration giving the district court authority to try the case *de novo* on the record to determine the facts and the law was constitutional, and the trial court did not err in denying the claimant's challenge to its jurisdiction. When courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test is whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative agency must make. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. (*Old Colony Tr. Co. v. Comm'r Int. Rev.,* 279 U. S. 716, 73 L. Ed. 918, 49 S. Ct. 499; *State ex rel. Attorney-General v. Hawkins,* 44 Ohio St. 98, 5 N. E. 228; *Floyd v. Dept. Labor & Ind.,* 44 Wn. 2d 560, 269 P. 2d 563; 42 Am. Jur. 368, Public Administrative Law, § 60; and cases cited therein.)

The classic statement setting out the abstract test to be applied by courts in distinguishing the judicial power from legislative power when examining administrative agencies was made by Justice Holmes speaking for the court in *Prentise v. Atlantic Coast Line,* 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67. He there said:

". . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. . . ." (p. 226.)

In applying the tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer, board or agency which performs it, that determines its character.

In applying the foregoing tests we conclude from the history of workmen's compensation acts in this and other jurisdictions that a court could have been given the duty of determining whether a workman was injured while acting within the scope of his employment and adjudicating the extent of his injuries. (*Lira v. Billings,* supra; *Floyd v. Dept. Labor & Ind.,* supra; and see *Roles Shingle Co. v. Bergerson,* 142 Or. 131, 19 P. 2d 94; and *State v. Mechem,* 63 N. M. 250, 316 P. 2d 1069.)

In England, where the first workmen's compensation act was enacted in 1897 and then revised by the workmen's compensation act of 1906, the act is now and always has been administered through the courts. (Dodd, Administration of Workmen's Compensation, pp. 62, 63; and Knowles, The Law Relating to Workmen's Compensation [3rd Ed.] p. 267.) Since the English acts preceded the first American workmen's compensation acts, the American compensation acts contain many of the essential features and phraseology of the British and Canadian acts. Thus, the British and Canadian decisions interpreting their own acts often throw light on the interpretation of the American acts. (I Schneider, Workmen's Compensation Text [Perm. Ed.] § 9, pp. 24, 25.)

Consequently, the courts in this state could have been charged originally with the duty of finding the facts which the director (and his examiners) under the workmen's compensation act found in this case.

Historically, the function performed by the director (and his examiners) is one which the courts performed prior to the passage of the workmen's compensation act of Kansas in 1927. Originally, in the act of 1911 workmen's compensation matters were handled as ordinary lawsuits in the district court. This was the rule until the need for an administrative remedy in workmen's compensation became apparent so that these matters could be shifted to an administrator or administrative body rather than the district court. In 1927 the commission of labor and industry was created by the legislature to administer the law. This was later amended to create the office of workmen's compensation commissioner to administer the law, and again amended so that at the present time the work-

men's compensation director administers the law. But each time the legislature wisely retained court control by providing for plenary review in the district court of the commissioner's and director's decisions in such claims by the provisions of 44-556, *supra,* and its predecessors.

It must therefore be said the functions now performed by the director under the Kansas workmen's compensation act historically were performed by the courts, and thus can truly be classed as judicial.

Applying the functions of the director of workmen's compensation to the definition of judicial power given by Justice Holmes in *Prentis v. Atlantic Coast Line,* supra, we find that the director investigates, declares and enforces liabilities as they stand on past facts (the injury of a workman while engaged in the course of his employment) under existing laws (the workmen's compensation act).

It seems clear to us the director of workmen's compensation in Kansas performs functions which are essentially judicial, and the office of the director should be classified as a quasi-judicial agency.

In 1954 the Supreme Court of the state of Washington had the identical issue here presented before it in *Floyd v. Dept. Labor & Ind.,* supra. Among other things it held:

"Since the board of industrial insurance appeals performs an essentially judicial function, the superior court, on an appeal from a decision of the board, has authority under RCW 51.52.115 to allow a trial *de novo* of the case upon the record made before the board; and such statute, in providing for such a trial, does not unconstitutionally delegate legislative or administrative functions to the superior court." (Syl. ¶ 7.)

We find the opinion persuasive and, insofar as applicable, have adopted its reasoning herein.

Under the creative statute here applicable (K. S. A. 1967 Supp. 74-710), the only qualification for the office of director is that "he shall before his appointment have had practical knowledge of the theory of workmen's compensation." The examiners (K. S. A. 1967 Supp. 44-551) are required to have no qualifications at all, except appointment from the director. Although they may be lawyers, neither the director nor examiners were required to be. While they regularly deal with claims for alleged bodily injury disabilities, none of them is required to be a doctor or a member of the healing arts profession. They are not required to have the necessary judicial training or temperament to enable them to weigh and evaluate evi-

dence, or discern the credibility thereof or to sift fantasy from fact. This was observed in *Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 98 P. 2d 456, where the court said:

". . . The commissioner is not required to be a lawyer and the statute (G. S. 1935, 44-523), appropriately provides the commission shall not be bound by technical rules of procedure. In order to insure reception by the commission or examiner of all evidence germane to every issue involved, this court has definitely held the examiner or commissioner must receive all evidence pertaining *to any question in issue* even though he may entertain doubt concerning its competency. (*Walz v. Missouri Pac. Rld. Co.*, 142 Kan. 164, 166, 45 Pac. 861; *Brown v. Shellabarger Mill & Elev. Co.*, supra [142 Kan. 476, 50 P. 2d 919]; *Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 837-840, 73 P. 2d 1032.) In case the examiner excludes testimony considered vital on any issue the aggrieved party is not without recourse, provided he acts timely. In *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396, it was stated:

" 'Considering these points together, it is of course both the statutory and moral duty of the commissioner to give the claimant and his adversary a fair opportunity to present their evidence; and the court sees no reason why tendered evidence excluded by the examiner could not be put in the form of affidavits or depositions and made part of the transcript which goes to the district court for its *independent decision on the law and the facts.*' . . ." (pp. 299, 300.)

K. S. A. 1967 Supp. 74-710 and 44-551 were amended in 1969 to require the director, assistant director, examiners and special examiners to be attorneys and admitted to practice law in Kansas. (L. 1969, ch. 246, §§ 3 and 4.)

The legislature in K. S. A. 1967 Supp. 44-556 wisely vested the district court with plenary power to review the record of the director's award in a workmen's compensation case on timely application made by any party aggrieved.

In conclusion we hold the director under the workmen's compensation act performs a function which is essentially judicial. Consequently, the district court did have jurisdiction under K. S. A. 1967 Supp. 44-556 to "grant or refuse compensation, or to increase or diminish any award of the director as justice may require." The section of the statute under consideration does not unconstitutionally delegate legislative or administrative functions to the judiciary. Therefore, the trial court did not err in reducing the temporary total disability of the claimant from ten percent to five percent, a decision which is supported by substantial competent evidence in the record.

The judgment of the lower court is affirmed.