No. 45,843

HAROLD STRADER, *Appellant*, v. KANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM, *Appellee.*

(479 P. 2d 860)

Opinion filed January 23, 1971.

*Arthur E. Hodgson,* of Hodgson and Kahler, of Lyons, and *John E. Wilkinson,* of Colmery, Davis, Bennett, Leonard and McClure, of Topeka, argued the cause and were on the brief for the appellant.

*Edward G. Collister, Jr.,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, *Sherman A. Parks,* Assistant Attorney General, and *Marshall Crowther,* Insurance and Benefits Counsel, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a judgment of the district court to which an appeal had been taken from an order of the Board of Trustees of the Kansas Employees Retirement System denying appellant's claim for permanent total disability benefits.

The basic facts are not in dispute.

The city of Lyons, Kansas, was a participating employer in the Kansas Public Employees Retirement System on September 9, 1965. On that date Harold J. Strader, appellant, was employed by the city of Lyons, Kansas, as a garbage collector at a salary of $350 per month. He was a member of the Kansas Public Employees Retirement System. He had no record or history of physical disability prior to September 9, 1965. His usual duties included driving a truck, collecting the refuse and emptying the refuse into the truck. He had performed these same tasks since his employment by the city on August 11, 1961.

On September 9, 1965, appellant reported for work as usual, worked through the morning, went home for lunch and returned to work. Shortly thereafter, and while the temperature was about 103 degrees, he drove a city truck to a home located about a mile from where he had commenced operations for the afternoon. Upon arriving at the home he set out to empty a 30-gallon container with the intent of emptying some of the trash from the container into two five gallon buckets in order to throw the trash onto the city truck. When he attempted to lift the container it began to slip and he tried to catch it by gripping it with his leg. He immediately began to feel dizzy but managed to get the container emptied.

Appellant drove about half a block at which time he felt so dizzy he stopped the truck. He opened the window of his truck in order to get some air. He remembers a beginning weakness in the left leg which rapidly progressed to weakness of the left arm and to the left half of his face and pain in the right eye. He became semi-conscious. Later he was discovered by some of the employees of the city of Lyons and taken to Rice County Hospital in Lyons, Kansas. He was hospitalized until October 23, 1965.

Appellant is totally disabled. There is no controversy regarding the timeliness of the application for accidental total and permanent disability retirement, or the member's report of total disability.

On July 21, 1967, the Board of Trustees of the Kansas Public Employees Retirement System denied the claim of appellant, and on July 25, notified him in writing of its findings, and also notified him of his right, if he felt aggrieved, to make application for a "hearing" before the Board in compliance with K. S. A. 74-4904 (2). On October 26, 1967, the hearing in question was held before the Board of Trustees and at that time the appellant appeared in person and by his counsel. Testimony was given by appellant in connection with his claim. After listening to the oral testimony of appellant, and his counsel's argument, the Board of Trustees considered the three medical reports and reaffirmed the findings that it made at its meeting of July 21, 1967.

The specific finding of the Board of Trustees stated:

"Based on the medical testimony it is found that Mr. Strader's disability did not arise out of and in the course of his employment with the city of Lyons."

Appellant filed notice of appeal to the district court of Shawnee County, Kansas, and also filed in the district court an instrument designated a petition. It read in part:

"8. The plaintiff's application for benefits, even though he's shown eligibility entitlement, has been denied, and the defendant System continues to refuse to pay this indebtedness owed to the plaintiff by the defendant System. The System continues to hold the contributions to the fund made by Harold J. Strader.

"9. In addition, the plaintiff states that justice requires that plaintiff be afforded an independent and judicial review which would include an opportunity to put on additional evidence to show more clearly his entitlement to the total disability benefit."

The appellee answered admitting the formal allegations of the petition, and stated:

"Admits that it has denied plaintiff's application for benefits and that it continues to hold his contributions to the fund, but denies that plaintiff has shown eligibility for benefits or that defendant is indebted to plaintiff as alleged in paragraph 8.

"Denies paragraph 9, and alleges that plaintiff was afforded a full and complete hearing before the Board of Trustees at which he was given the opportunity to present any evidence he desired; that all evidence offered by him was received; that the Board gave fair and impartial consideration to such evidence and found in good faith that as a matter of fact plaintiff had not suffered an accident such as would entitle him to any benefits."

Appellant then filed a reply which for the first time raises the question of the constitutionality of the act:

". . . Plaintiff specifically asserts and re-asserts that the act is defective from a Constitutional standpoint, and he asserts further that the variety of consideration given him in this case illustrates the need for (1) either hearing additional testimony, or (2) for additional directives to the System, either judicially or legislatively. If the System has the power to make these changes through administrative enactment, then, in that event, the System has failed to afford this participating employee a hearing which meets the due process requirements of the United States Constitution."

Appellant later filed a motion for summary judgment, which reads:

"Comes now the Plaintiff, Harold Strader, and in accordance with K. S. A. 60-256, and moves the Court to enter summary judgment for the Plaintiff and refers the Court to the testimony under oath given previously by the Plaintiff, Harold Strader, which is irrefutable by this Defendant or any expert testimony."

The appellee also filed a motion for summary judgment, which reads:

"The defendant, Kansas Public Employees Retirement System, hereby moves this Court to enter summary judgment for the defendant in accordance with the provisions of K. S. A. 60-256 (b) and (c), on the ground that the pleadings filed show that the defendant is entitled to judgment as a matter of law."

The district court considered jointly the motions for summary judgment and filed a comprehensive memorandum opinion which we quote in part:

"In connection with this matter of scope of review, the Court refers to the case of *Pickman v. Weltmer,* 191 Kan. 547, which was a case involving the Employment Security Board of Review of the State of Kansas. In the Pickman case the Court refers to the provisions of K. S. A. 44-709, which provides '. . . In any judicial proceeding under this section the finding of the Board as to facts if supported by evidence in the absence of fraud shall be conclusive, and the jurisdiction of said Court shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law. . . .' In that case, while the statute referred to providing for judicial review goes into more detail than the one herein involved, it seems that the same criteria was set up by the Legislature and that the findings and holdings of an administrative tribunal, as far as judicial review under such statute, would be limited to an examination of the record and whether there was ample evidence to support the findings of fact made by the administrative board. Further, that the judicial review must be made in the light most favorable to the findings and holdings of the administrative tribunal where there is no suggestion of fraud.

"In the case before the Court, it would seem that the matter of judicial review herein would be limited as above indicated, and there is no reference made to fraud of any type. Therefore, in connection with these joint motions

for summary judgment, this Court has carefully reviewed the record herein and under the guide lines as set forth in the case of *Pickman v. Weltmer* above referred to, this Court is of the opinion that there was ample evidence to support the findings of fact made by the Kansas Public Employees Retirement Board of Trustees, and these findings are herewith, by this reference, adopted and incorporated in this decision. It is the further order of this Court that the motion for summary judgment filed herein by the defendant should be and hereby is sustained, and the motion for summary judgment filed herein by the plaintiff is hereby overruled."

The statute (K. S. A. 1965 Supp. 74-4916; L. 1965 Ch. 446 § 4) governing the right to permanent total disability at the time of the injury reads:

"(3) (*a*) Upon the application of a member, or his appointing authority acting for him, a member who is in the employ of a participating employer and becomes totally and permanently disabled for duty in the employ of a participating employer, by reason of an accident may be retired by the board if, (A) the board finds the total and permanent disability to be the natural and proximate result of an accident causing personal injury or disease and *arising out of and in the course of the member's actual performance of his duties as an employee of a participating employer;* . . ." (Emphasis supplied.)

The underscored language was materially amended by the 1967 legislature (K. S. A. 1970 Supp. 74-4916 [3] [*a*]) but it has no application here as the injury occurred in September of 1965.

The provision for review is to be found in K. S. A. 74-4909 (10). It reads:

"All decisions of the board as to questions of fact shall be final and conclusive on all persons except for the right of review as provided by law and except for fraud or such gross mistake of fact as to have an effect equivalent to fraud."

The controlling issue before the Board of Trustees of the Kansas Public Employees Retirement System was, did the appellant's injury arise "out of and in the course of the member's [appellant's] actual performance of his duties?"

The appellant first contends that—

"The conclusion made by the Kansas Public Employees Retirement Board that plaintiff Strader suffered an independent, non-precipated or non-aggravated cerebral artery aneurysm *is contrary to the Board's findings of the* operative facts; the Board ignored the basic operative facts in arriving at its ultimate conclusion."

Perhaps we should first, as did the trial court, consider the scope of judicial review on appeal from a finding of an administrative agency.

The statute covering this question (K. S. A. 74-4909 [10]) makes conclusive the Board of Trustees' finding of fact except for the right of review (1) as provided by law; (2) fraud, or (3) gross mistake of fact as to have an effect equivalent to fraud.

We do not see that the scope of review as provided by the statute materially changes the rule long established by this court for review of findings made by administrative agencies. We have limited such review to arbitrary, capricious, unreasonable or unfair conduct. It may be said that any such conduct is a species of fraud—at least constructive fraud.

The rule for determining the scope of judicial review in cases such as we now have before us was announced in *Pickman v. Weltmer*, 191 Kan. 543, 382 P. 2d 298, at page 547, where we stated:

"The foregoing is a finding of fact and under G. S. 1961 Supp., 44-709 (*h*), where a claimant seeks judicial review, findings of fact of the Board of Review are conclusive and may not be set aside by the district court in the absence of fraud where they are supported by evidence, and the jurisdiction of the court is confined to questions of law. (*Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550; *Craig v. Kansas State Labor Commissioner*, 154 Kan. 691, 121 P. 2d 203; *Read v. Warkentin, Commissioner*, 185 Kan. 286, 341 P. 2d 980; *Clark v. Board of Review Employment Security Division*, 187 Kan. 695, 359 P. 2d 856.) Those cases embrace the rule that judicial review must be made in the light most favorable to the findings and holding of the administrative tribunal. (81 C. J. S., Social Security and Public Welfare, § 232, pp. 341-349.)

"A reading of the record of this appeal reveals there was ample evidence to support the findings of fact made by the administrative board. There is no suggestion of fraud. Hence, the findings of the Board of Review were conclusive on appeal to the district court and in this court. . . .'"

The above statement was followed in *Chadwick v. Employment Security Board of Review*, 192 Kan. 769, 390 P. 2d 1017 and *Boeing Co. v. Kansas Employment Security Board of Review*, 193 Kan. 287, 392 P. 2d 904.

It may also be noted that whether there is any evidence to support the Board of Trustees' finding, or whether the findings are contrary to the evidence, presents a question of law which is always open to review by the courts. A finding without evidence, or contrary to the evidence, would also be such a gross mistake of fact as to have an effect equivalent to fraud as that phrase is used in the statute now under consideration.

We, therefore, examine the record for the purpose of determining whether there is substantial competent evidence to support

the finding of the Board of Trustees that appellant's disability did not arise out of and in the course of his employment.

The appellant contends that because he sustained his disability just after attempting to lift a 30 gallon container the injury arose out of and in the course of his employment as a matter of law under this court's decisions in workmen's compensation and accident insurance cases.

Without deciding whether or not the rule announced in workmen's compensation cases, as to what constitutes injuries arising out of and in the course of employment, applies to claims arising under the Kansas Public Employees Retirement System but only so assuming for the purpose of our consideration here, we must conclude that the facts here presented would not compel a finding that the disability arose out of and in the course of employment, as a matter of law, under the rules announced in such cases.

The appellant relies chiefly on *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *McIver v. State Highway Commission,* 198 Kan. 678, 426 P. 2d 118, and *Williams v. Benefit Trust Life Ins. Co.,* 200 Kan. 51, 434 P. 2d 765.

The *Pinkston* case had the question of an injury arising out of employment under the Workmen's Compensation Act where the employee had a fatal heart seizure while performing his duties. We stated:

"The phrase 'arising out of' employment points to the cause or origin of the accident and *requires some causal connection between the injury and the employment.* An injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of employment. . . ." Emphasis supplied.) (p. 302.)

In the *Pinkston* case the medical testimony was that the additional physical exertion aggravated and participated his fatal seizure. The trial court's finding of injury arising out of and in the course of employment was sustained.

In the *McIver* case we also had the question of whether a heart condition arose out of and in the course of employment under the Workmen's Compensation Act. We held in paragraph 2 of the syllabus:

The aggravation or acceleration of a pre-existing heart condition under the stress of ordinary labor resulting in disability constitutes a 'personal injury by accident arising out of and in the course of employment' as that term is used in K. S. A. 44-501."

In the *McIver* case the medical testimony was that the labor being performed was an aggravation of a pre-existing condition. The judgment in favor of the employee was affirmed.

The *Williams* case involved the question of what constituted an accidental injury under the terms of a policy insuring against accident. It was held in the first paragraph of the syllabus:

"Where an accidental injury activates or aggravates a dormant disease or physical infirmity, the accident may be said to have been the proximate cause of the resulting disability within the usual provisions and ordinary meaning of a policy insuring against accident."

Axiomatic in all of the cases is the requirement that before there can be an accident or injury arising out of and in the course of employment, there must be a causal connection between the injury and the employment or the employment must aggravate or accelerate a pre-existing condition.

We must look to the medical testimony for the nature of appellant's injury and the effect of his labors upon his cerebral vascular disorder.

The force and sincerity of the argument made by able counsel for appellant leads us to set out the medical testimony at some length.

Appellant was examined by Dr. Foster May 17, 1966. He made his report from information obtained directly from appellant, from his wife who accompanied him and from a photostatic copy of his hospitalization. His written report reads in part:

"I felt that the current manifestations and acute illness of September 1965 in Mr. Strader were the results of a cerebral thrombosis, in the distribution of the right middle cerebral artery, located in the right internal capsule. The hospital record and course to date do not document a diagnosis of ruptured cerebral artery aneurysm. The almost certain cause is cerebral arteriosclerosis, with a left capsular hemiplegia. The information available to me does not document any specific contributing factor relating to his occupation which might be a significant provocative agent in contributing to its development. The patient reports that the environmental temperature was 'high' on September 9, 1965, which would not be a factor specifically related to his occupation. Depending upon the exact environmental temperature, the continuity of his physical activity, the frequency with which he ingested liquid beverages, and the degree of activity or inactivity immediately preceding the onset of his episode of left hemiplegia, one might speculate that dehydration may have been a factor in the genesis of the episode. *It is most unusual for capsular hemiplegias of this type to be directly related to heavy manual exertion; much more commonly they come on during sleep or during periods of relative physical inactivity. . . .*" (Emphasis supplied.)

Dr. McCarter reported as follows:

"With regard to the file of Harold J. Strader I have reviewed the following: (1) a letter written by J. T. Grimes, M. D., dated June 9, 1966, (2) form KPERS-38 completed by J. T. Grimes, M. D. on December 17, 1965, (3) the letter by D. Bernard Foster, M. D.

"It is apparent after reviewing the above information that Mr. Strader did suffer a cerebral vascular disorder while working at his usual occupation on September 9, 1965. It is my medical opinion however that the nature of the illness and the time of its onset was unrelated to either his physical activities or the climatic environment immediately preceding its onset.

"In my opinion Mr. Strader's illness should not be considered a result of an accident arising out of the course of his employment."

Dr. Grimes, appellant's physician, made a second report at appellant's request. He stated:

"As we discussed on October 3, 1967 at my office, there is a possibility of aggravation of a pre-existing but unknown weakness of one of Mr. Strader's cerebral arteries. The weather was hot (103° F.) and other city employees stated that some of the garbage containers were full and relatively heavy. This is not to say that the stroke could not have occurred at any time of the day or night regardless of temperature or work load. I do not know the answer to that question."

It is clear from the medical testimony in this case, and the medical testimony in the cases cited, that while physical exertion may increase the burden placed on the heart, it has little, if any, effect on the blood vessels of the brain.

We are forced to conclude that there was ample evidence to support the finding of the Board of Trustees that the disability did not arise out of and in the course of appellant's actual performance of his duties.

The appellant complains that he did not have a complete hearing because the procedure afforded a claimant coming before the Kansas Public Employees Retirement Board does not provide for the opportunity of cross-examination nor for the subpoenaing of witnesses.

The record does not bear out the contention that appellant did not have a complete and satisfactory hearing.

On August 23, 1967, he wrote to the Board of Trustees stating:

"I sincerely hope that a hearing on this matter might be put off at least until some time in October. I'll try and make myself available whenever the Board would want to hear it. I certainly hope that you can accommodate me by a later date for a hearing than September 7th.

"*Any documentary evidence which I will want to submit I will do in advance of any hearing date.* So far I have not been able to talk to Dr. Grimes nor to secure any other testimony."

The hearing was held on October 26, 1967, at which time appellant took the witness stand and was examined by his attorney. Appellant's attorney made his argument. The chairman of the Board of Trustees then asked if there was any other evidence to be offered in appellant's behalf. Appellant's attorney asked the Board of Trustees to consider the latest report of October 6, 1967, from Dr. Grimes of Lyons, Kansas, and requested that this be considered in addition to the oral testimony in the case. Dr. Grimes' report of October 6, 1967, is quoted herein. The reports of the other doctors mentioned and other records had been previously filed with the Board of Trustees.

There is no indication that the appellant intended to present evidence in any form other than oral testimony on his own behalf, written medical reports from his physician and oral argument by his counsel. The record indicates that at the time of the hearing there was no objection to the hearing procedure and that at the close of the hearing counsel for the appellant conceded that everything which he felt should be presented was before the Board of Trustees.

In the two points which the appellant has raised regarding the fairness of the hearing—lack of power to subpoena witnesses and the fact that no cross-examination took place—appellant would appear to be contending that without a trial *de novo* in the district court he is denied due process of law.

The appellant got everything before the Board of Trustees that he requested. He did not suggest cross-examination of the doctors who filed the reports. Two of them were in the city of Topeka where the hearing was being held and subject to call. The other, Dr. Grimes, was appellant's own doctor. He was not hurt by the absence of statutory procedure for subpoenaing witnesses.

It will be time enough for this court to pass upon the due process of law question when it is raised by someone who is hurt.

Constitutionality of legislation or due process before an administrative body will be considered by the courts only where necessarily involved and such constitutionality may not be questioned by one not affected by its operation. (*Stone v. City of Wichita*, 145 Kan. 377, 380, 65 P. 2d 595; *Marks v. Frantz*, 179 Kan. 638, 643, 298 P. 2d 316; *State v. Consumers Warehouse Market*, 183 Kan. 502, 511, 329 P. 2d 638.)

We have not overlooked the statement in appellant's petition—

"In addition, the plaintiff states that justice requires that plaintiff be afforded an independent and judicial review which would include an opportunity to put on additional evidence to show more clearly his entitlement to the total disability benefit."

We would suggest that a party appearing before an administrative body cannot produce his evidence piecemeal. He cannot produce part of his evidence before an administrative agency and then produce the balance on judicial review. He must produce all of his evidence on the merits before the administrative body or show a good faith effort to do so.

The judgment is affirmed.

APPROVED BY THE COURT.