No. 47,705

In the Matter of CLARENCE STEPHENS, *Appellant*, v. UNIFIED SCHOOL DISTRICT No. 500, *Appellee*.

(546 P. 2d 197)

Opinion filed December 1, 1975.

*David L. Ryan,* of Topeka, argued the cause, and *Curt T. Schneider,* attorney general, *Charles S. Scott,* of Topeka, and *Roger W. Lovett,* of Topeka, were with him on the briefs for the appellant.

*Willard L. Phillips,* of Kansas City, argued the cause, and *Patrick D. McAnany* and *Gloria Vusich,* of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FOTH, C.: This case arises under the Kansas act against discrimination, K. S. A. 44-1001 *et seq.* The issues presented are procedural, involving what is required to preserve for judicial review a claim made before the Kansas commission on civil rights, and what the scope of that review should be when it is made.

In 1970 Clarence Stephens was employed by the appellee Unified School District No. 500 as a tenured teacher, and the school's only black teacher, in Central Junior High School in Kansas City. Central's student body was largely white. That summer he married Carolyn Sue Fuller, a white woman who was also a tenured teacher at Central. Upon learning of the marriage when school was about to start in August, Central's principal immediately expressed concern over the problems it would create. He informed Stephens that an unwritten policy of the school district precluded married employees from working in the same school, and that he would have to transfer to another school. After a conference the next day with an assistant superintendent of schools, Stephens was transferred to Northeast Junior High School. There the faculty was predominantly black, and the student body was entirely black. He replaced a white teacher who was transferred to Stephens' old position at Central. There were at that time two married couples teaching at Northeast, and they were permitted to continue to teach there

despite the unwritten rule. Stephens subsequently filed a complaint with the Kansas commission on civil rights alleging that the transfer was racially discriminatory and constituted an unlawful employment practice in violation of K. S. A. 44-1009 (*a*) (1).

An investigating commissioner found probable cause to credit the allegations of Stephens' complaint, and when efforts at conciliation failed the matter proceeded to public hearing. After three days of hearing the case was taken under advisement. In due course the commission entered its order, accompanied by 79 findings of fact and 7 conclusions of law (occupying in all 19 pages in the Record on Appeal).

In essence the commission found:

1. In the immediate past four years the district had made an exception to its unwritten rule for the benefit of married teachers who had tenure in at least ten instances. No prior case of its enforcement against a tenured teacher was discovered. In the 1970-71 school year the policy was enforced against four couples. The Stephenses and one other couple were tenured, the other two couples were newly hired for that year. The effect, the commission found, was to treat Stephens differently from others similarly situated, *i. e.*, from the other tenured teachers for whom exceptions had been made in the past and were currently being made.

2. The principal's conduct upon hearing of the marriage and in requesting the transfer was in itself discriminatory.

3. The effect of the transfer was to affect adversely the racial balance at both Central and Northeast without any valid business motive to redeem the move.

Finding a violation of the act, the commission ordered Stephens reassigned to Central and forbade the further transfer of him or his wife without commission approval. The school district was further ordered to report on its compliance to the commission.

The school district filed a timely motion for rehearing, which will be discussed later. In response the commission modified its findings in particulars which are unimportant here, and reaffirmed its original determination as modified. The school district filed a notice of appeal to the Wyandotte county district court, indicating that the appeal was from the original findings, conclusion and order, and from the ruling on its motion for rehearing.

In the district court the commission moved to dismiss. It contended that the district's motion for rehearing (*a*) was not specific enough to preserve any issue on appeal, and (*b*) did not challenge

the commission's second and third grounds ("2" and "3" above) for finding a violation, which were alleged to be alternative grounds adequate to support the commission's order.

The trial court overruled the motion to dismiss and granted the parties unlimited discovery rights in order to sharpen the issues to be tried. Later it announced its intention to conduct a trial *de novo*, and directed the parties to file and exchange lists of witnesses.

Ultimately both parties declined to offer any new evidence and the matter was submitted to the trial court on the transcript of the record before the commission. In a letter opinion the court, after reciting the history of the proceeding, made the following findings:

"The Court finds that in Unified School District No. 500 there did exist at the time of this incident an unwritten rule which generally provided that married teachers would not be permitted to teach in the same school, the rule also applying to blood relatives. This unwritten rule existed in its origins basically concerning relationships by blood. This was early in the school district's existence at a time when married women were not permitted under any circumstances to teach in any school in the district.

"That during the War years, that is, during the 1940's, this rule had very little if any, application by reason of the fact that so many men teachers were in the armed forces and married females were taken into the system to fill this void.

"The testimony further showed that subsequent to this period, and after the armistice of World War II, and with the population explosion being what it was, the demand for teachers necessitated some relaxation of this rule, and then only in the last few years has it been regularly applied in District 500.

"The evidence in this case further showed that in the year in question, 1970-71, this rule was enforced to its fullest extent, with the exception of those instances of teachers in the system who had for many years been employed as exceptions to this particular rule.

"The evidence further showed that during the school year of 1970-71, all teachers coming into the system for the first time and those who had been in the system and had married during the summer of 1970 were treated alike and were separated by the school district and placed in separate schools.

"The evidence further showed that in the case of Mr. and Mrs. Clarence Stephens, they were the only interracial couple in School District 500, that is, a married [couple] composed of a Caucasian and a Negro, which was affected by the rule as applied during the summer of 1970 for the school year 1970-71.

"The testimony further showed that there were no extenuating circumstances in this particular situation which were called to the attention of the board which would have been in justification whatsoever for a relaxing of the rule or for a waiver thereof by the school board to permit the subject couple to remain as teachers at the same school as they had been employed as single parties in previous years in the forthcoming school year of 1970-71.

"There was absolutely a total lack, and the testimony is void of any racial consideration being given by the school board for this transfer. The record

is totally void concerning any intention or attempt to enforce the rule as it applies to the Stephenses to in any way affect favorably or adversely the question of the integration of the faculty of either Central Junior or the other schools in the system, and/or that there was any consideration given as to the school population, either at Central Junior or at Northeast, as a b[a]sis for the transfer.

"The testimony showed that primarily one would say that Central Junior High School was basically a school populated as a majority with white children and Northeast being basically populated by negro children.

"Based upon these findings of fact from the evidence presented, the Court finds that Unified School District # 500 has not violated any of the provisions of Section 44-1009 dealing with unlawful employment practices which would be a basis for a finding of discrimination or segregation in any respect.

"Therefore, the Court does now set aside the order of the Commission on Civil Rights, docketed as No. 695-71, and dated 21 October 1971, and enters judgment in favor of the Unified School District # 500."

In compliance with the court's instructions counsel for the school district prepared the journal entry of judgment. That document worded the court's findings in a slightly different fashion:

"Now on this February 5, 1974, upon consideration of the pleadings filed herein, the statements and arguments of counsel and the evidence submitted, the Court finds that the findings of the Commission on Civil Rights that the Appellant violated portions of K. S. A. 44-1009 is not substantially supported by the evidence, that the decision of the Commission is arbitrary, unlawful and unreasonable and there is a total lack of evidence that the Appellee was not treated in exactly the same manner as were other teachers under the same circumstances and at the same time."

The commission and the complainant have appealed to this court. Although set out in six separate points, their contentions here fall into two categories. First, they renew their attack on the school district's motion for rehearing for its claimed lack of specificity and its claimed failure to attack the "alternative grounds" for the commission's order. These were the attacks made in the commission's unsuccessful motion to dismiss in the district court. They are amplified here by claims that both deficiencies in the rehearing motion constitute a failure to exhaust the district's administrative remedy, and that the school district's notice of appeal to the district court likewise did not specify with sufficient particularity the issues to be litigated.

The second broad ground alleged for reversal is that the trial court erroneously conducted a trial *de novo*, making its own findings of fact, drawing its own inferences from the record, and substituting its judgment for that of the administrative agency.

The issues thus framed posed serious questions concerning the

interrelationship between the rehearing provisions of K. S. A. 44-1010 and the judicial review provisions of K. S. A. 44-1011—particularly in the light of *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 510 P. 2d 132. In that case we held that failure to file a motion for rehearing before the commission as required by K. S. A. 44-1010 precluded judicial review of the commission's order. We further stated, by way of dictum, that if we were called upon to construe K. S. A. 44-1011 we would hold that judicial review of an order of the commission under that section would be of the same limited nature as that afforded other administrative agencies. That is to say, it would be limited to determining whether, as a matter of law, (1) the commission acted fraudulently, arbitrarily or capriciously, (2) its order is supported by substantial competent evidence, and (3) its order is within the scope of its authority. Because of the court's uncertainty as to the correctness of *Jenkins*, after this case was argued at the May session the court entered an order restoring it to the docket and directing rebriefing of four issues. These were:

"1. What type of hearing and scope of judicial review are contemplated by the third and fourth paragraphs of K. S. A. 44-1011?

"2. Are the provisions of K. S. A. 44-1011, and especially those calling for a 'trial *de novo* with or without a jury,' irreconcilably repugnant to the provisions of K. S. A. 44-1010?

"3. Are the factual determinations made and the order entered by the Kansas Commission on Civil Rights in this case of such a character that they could constitutionally have been made by a court in the first instance?

"4. Should *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 510 P. 2d 132, be overruled?"

The case was rebriefed, has been reargued, and is now ripe for decision.

We turn first to the rehearing requirement of K. S. A. 44-1010:

". . . No cause of action arising out of any order or decision of the commission shall accrue in any court to any party unless such party shall make application for a rehearing as herein provided. Such application shall set forth specifically the ground or grounds on which the applicant considers such order or decision to be unlawful or unreasonable. No party shall, in any court, urge or rely upon any ground not set forth in said application."

In *Jenkins* we observed that the requirement is "neither unique nor novel" in Kansas administrative law. After noting similar requirements dealing with other administrative agencies which have been uniformly upheld and applied we said:

"It is clear the rehearing requirement is provided as a proper administrative law procedure in order to assure exhaustion of administrative remedies. The

doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency. It requires avoidance of interference with functions of the administrative agency by withholding judicial action until the administrative process has run its full course. The failure to exhaust administrative remedies has often been emphasized as a ground for denying judicial review. It rests on sound consideration of comity and convenience, fully recognizing the separation of powers doctrine as set forth in our case law. [Citations omitted.]" (*Jenkins v. Newman Memorial County Hospital,* supra, p. 95.)

We went on to find that the rehearing requirement, with its limitations on the issues subject to judicial review, was not repugnant to or in conflict with the review provisions of K. S. A. 44-1011. The reason assigned was that the "*de novo*" language of the review section meant something less than a true *de novo* review. The court is now convinced that the reason given was erroneous (as will be discussed later) but that the conclusion reached was sound.

Regardless of the type of judicial review afforded, it is within the competence of the legislature to require exhaustion of administrative remedies before permitting resort to the courts. As we said in *Jenkins:*

"The doctrine of exhaustion of administrative remedies dictates that a remedy before an administrative agency provided by law must be sought *and completed* before courts will act. The doctrine is well established, is a cardinal principle of almost universal application, and must be borne in mind by the courts in construing a statute providing for review of administrative action. [Citations omitted.]" (*Ibid.* Emphasis added.)

The fact that a failure to exhaust may limit the issues open to the courts is of no moment. "The district courts are expressly created by the Constitution of the state of Kansas and are given only such jurisdiction as may be provided by the Legislature." (*Thompson v. Amis,* 208 Kan. 658, 661, 493 P. 2d 1259.) Limiting the court's inquiry on appeal to those issues properly presented to the administrative agency is no more than consistent with the general requirement of exhaustion and with our admonition that "a party appearing before an administrative body cannot produce his evidence piecemeal. He cannot produce part of his evidence before an administrative agency and then produce the balance on judicial review." (*Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 402, 479 P. 2d 860.) Just as he must produce his

evidence before the agency in order to claim exhaustion, so must he produce his legal issues.

We note that a similar rule formerly applied under the Oregon workmen's compensation act. There, under ORS 656.288 (3) (repealed 1965), an appeal from the administrative decision was tried "as other civil cases in the court," with a jury trial available on demand. The Oregon supreme court characterized that state's procedure as follows:

"The case is tried de novo and all matters of fact and law are decided anew, *subject only to the limitation that all issues must have been raised in the application for rehearing.*" (*Burkholder v. S. I. A. C.*, 242 Or. 276, 282, 409 P. 2d 342. Emphasis added.)

We hold that a motion for rehearing under K. S. A. 44-1010 is a prerequisite to judicial review and that on such review the court's inquiry is limited to those issues fairly raised by the motion.

It is therefore necessary to examine the motion for rehearing filed by the school district before the commission to see what issues were fairly raised and therefore preserved for judicial review. That document contained twelve purported reasons for a rehearing. The commission summarily rejected nine of these as lacking the specificity required by the statute. ("Such application shall set forth *specifically* the ground or grounds on which the applicant considers such order or decision to be unlawful or unreasonable." [Emphasis added.] ) In large measure we agree. A claim of "abuse of discretion on the part of the Commission," without more, raises no identifiable issue requiring consideration by the commission or permitting consideration by a court. The same may be said of such claims as "accident and surprise" and "erroneous rulings," totally unembellished by any facts or details.

Two of the claims, however, were in the opinion of this court sufficient to raise justiciable issues. They were numbered 3 and 5:

"3. Because the findings of fact and conclusions of law are not supported by the evidence."

"5. Because thre (sic) was no evidence before the Commission that the complainant was treated differently from other teachers married in the summer of 1970, who were assigned to teach in the same school for the ensuing school year."

The commission recognized number 5 as raising the question as to whether the treatment of Stephens was to be compared with that given other tenured teachers, or with that given other newly married teachers. It had previously found the former to be the

comparable group, and in ruling on the motion adhered to its former position.

Number 3 was among those reasons considered too vague for consideration by the commission. Without a doubt it leaves something to be desired in the way of specificity. However, the position of the school district was that the evidence, taken as a whole, did not support *any* of the three grounds which formed the basis for the commission's finding of a violation. The school district would simply have had the commission draw entirely different inferences from the evidence. Perhaps it should have detailed those inferences, but as the commission pointed out in its denial order, "Counsel has had full opportunity to present his views" and the commission was doubtless aware of them. This court is inclined to give a liberal interpretation to the motion, and finds that a claim that the findings and conclusions "are not supported by the evidence" is, under the facts of this case, specific enough to raise the general issue of evidentiary support for all three of the commission's grounds. The trial court, therefore, was entitled to review them all, as it did.

The more difficult question is the proper scope of judicial review of the commission's order. The commission, based on the court's letter opinion, asserts that the trial court tried the case *de novo* and that this was error. The school district points to the language of the journal entry quoted above and the fact that no new evidence was received for the proposition that there was *no* trial *de novo*. It further says that even if there was such a trial it was proper for the trial court to conduct one.

Our examination of the trial court's decision leads us inevitably to the conclusion that it did conduct the trial *de novo* it had said it would, in the sense that it made an independent examination of the record, made its own findings of fact and drew its own inferences, all without regard to the manner in which the commission had previously dealt with the identical evidence. It did not limit its review to determining whether the commission's findings were supported by substantial evidence, but substituted its own judgment for that of the commission on what the evidence proved.

Actually, its findings of evidentiary fact were not greatly at odds from those of the commission. On the primary issue the trial court did not dispute that Stephens was treated differently from other tenured teachers, but found justification for the difference in the district's past dealings with long-time married employees. The significant factor, it found, was that Stephens was *not* treated differently

from other teachers who were newly married in 1970 or who were new to the system that year. From this latter lack of difference it concluded that there was no discrimination. It thus drew different inferences and reached different findings of ultimate fact, which it would be entitled to do if it could conduct a true trial *de novo.*

On the commission's "alternative grounds" the trial court's findings are not so clear. As to the effect of the transfer on the racial balance at the two schools, the court simply found no "intention or attempt to enforce the rule as it applies to the Stephenses to in any way affect favorably or adversely the question of the integration of the faculty of either Central Junior or the other schools in the system, and/or that there was any consideration given as to the school population, either at Central Junior or at Northeast, as a b[a]sis for the transfer." Although a lack of discriminatory intent may not be a defense to an employment practice which has a net discriminatory effect in fact, intent is a factor to be considered in any discrimination case. See *Griggs v. Duke Power Co.,* 401 U. S. 424, 432, 28 L. Ed. 2d 158, 91 S. Ct. 849. But further, this court is of the opinion that the trial court's decision, read as a whole, necessarily finds the enforcement of the district's unwritten policy against married couples teaching in the same school is a "valid business motive." Under K. S. A. 44-1009 (*a*) (1), it is an unlawful employment practice to discriminate "because" of race—the court found no racial motivation—or "to follow any employment procedure or practice which, in fact, results in discrimination, segregation or separation *without a valid business motive."* (Emphasis added.) The trial court's finding of a valid business motive, if made, would negate a finding of an unlawful practice based solely on the unintended effect on the racial balance of the two schools.

Finally, the trial court dealt with the claim that the principal's conduct was itself discriminatory by finding that "There was absolutely a total lack, and the testimony is void of any racial consideration being given by the school board for this transfer." In the trial court's view, apparently, the motivation of the principal in instigating the transfer was irrelevant. He had no power, acting on his own, to implement the proposed transfer. The transfer itself was accomplished by the board, acting through the assistant superintendent. At this level the court found no evidence of any improper motivation.

Whether we are correct or not in our reading of the trial court's

findings on the two "alternative grounds," the fact remains that it did *not* find any discrimination on either ground. This is, in essence, a negative finding. Under the usual rules of appellate review we cannot find error in such a finding or in the failure of a trial court to make positive findings, unless the trial court arbitrarily disregarded undisputed evidence *(Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 500 P. 2d 39).

It should be emphasized that the commission does not contend in this appeal that the trial court's findings on any of the issues are not supported by substantial competent evidence, or that it ignored uncontroverted evidence. Indeed, it brings none of the evidence before this court for review. Rather, it simply contends that the trial court should not have been making findings at all. Its position in this respect is readily understandable when one considers the dictum of this court in *Jenkins* which prompted the rebriefing order herein, and which presents the critical issue in this case.

K. S. A. 44-1011 provides that the attorney general, county attorney, or any person aggrieved by an order of the commission may obtain judicial review by filing a notice of appeal. It goes on to provide in part:

"The court shall hear the appeal by trial *de novo* with or without a jury in accordance with the provisions of K. S. A. 60-238, and the court may, in its discretion, permit any party or the commission to submit additional evidence on any issue. Said appeal shall be heard and determined by the court as expeditiously as possible. After hearing, the court may affirm the adjudication. If the adjudication by the commission is not affirmed, the court may set aside or modify it, in whole or in part, or may remand the proceedings to the commission for further disposition in accordance with the order of the court.

"The commission's copy of the testimony shall be available at all reasonable times to all parties for examination without cost, and for the purpose of judicial review of the order. The review shall be heard on the record without requirement of printing."

In *Jenkins* we said "The legislature may not impose upon the judiciary the function of a trial *de novo* in the true legal sense when providing for the scope of review of actions of an administrative remedy." (212 Kan. at 96.) That statement was based on a constitutional separation of powers premise. Putting the constitutional issue aside for the moment, our first problem is to ascertain what the legislature intended when it decreed that the court should hear the appeal "by trial *de novo* with or without a jury in accordance with the provisions of K. S. A. 60-238."

We note first of all that the *de novo* language and the reference

to 60-238 were inserted in the statute for the first time in 1965 ( L. 1965, ch. 323, § 7). Prior to the amendment the sentence merely said "The court shall hear the appeal with or without a jury and the court may, in its discretion, permit any party or the commission to submit additional evidence on any issue." The additions, presumably, were intended to make some significant change. (*Curless v. Board of County Commissioners,* 197 Kan. 580, 587, 419 P. 2d 876; *Horyna v. Board of County Commissioners,* 194 Kan. 445, 448, 399 P. 2d 844.) The addition of the phrase *de novo* surely signifies an intent that the court should hear the case "anew." And looking to the section of the code of civil procedure newly referred to, we find it deals with jury trials as of right. It makes such a trial available on demand in cases where it is guaranteed by the Constitution or where "given by a statute of the state."

Whether 44-1011 was itself intended to be a "statute of the state" which gives a jury trial as of right is a question of some difficulty. That question need not be determined in this case, however, because no demand for a jury trial was made. It is enough for present purposes to recognize that a jury trial is available at least in those cases covered by section 5 of the Bill of Rights.

Assuming then, that in a proper case a jury trial is held, what issues are to be determined by the jury? Under what is referred to as the "standard scope of review for administrative proceedings" (*Jenkins,* supra at 98) the issues to be determined are simply "whether, *as a matter of law,* (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority." (*Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P. 2d 828, Syl. ¶ 1. Emphasis added.) Our administrative review cases state and restate that these are the only issues open to the court. And, of course, they are all issues of *law,* not of fact. "Where trials are by a jury, it is the sole province of the court to decide questions of law as distinguished from questions of fact." (*Schmid v. Eslick,* 181 Kan. 997, 1004, 317 P. 2d 459.) Hence if *de novo* in this statute means that the only issues to be resolved are those open under the "standard scope of review," the provision for a jury trial is meaningless. With only legal questions to be determined the jury would have no function.

The commission suggests that the jury's function might be to determine the "reasonableness" of the commission's action, and cites

us to *Lira v. Billings,* 196 Kan. 726, 414 P. 2d 13. There the court was concerned with the constitutionality of the statute affording a *de novo* review with a jury trial of an administrative order revoking a driver's license for failure to submit to a chemical test for blood alcohol content. The act was challenged as putting the courts in the licensing business in violation of the doctrine of separation of powers. The court rejected the challenge, finding the issue of the "reasonableness" of an individual's conduct to be a proper judicial issue, and one which courts and juries were well equipped to resolve by custom and experience. Likewise rejected was a contention that only the reasonableness of the *agency's* action in revoking the license could be considered. It was the *driver's* conduct, not the agency's, which was subject to scrutiny by the jury. The appellant there was entitled, we said, to "the exercise by the court of an independent judgment, with right of trial by jury under appropriate instructions if demanded by petitioner." (P. 731.) *Lira,* as we read it, militates in favor of a full and complete trial *de novo* rather than any limited type of review.

The statutory provisions authorizing the court to receive additional evidence and to "modify" the commission's order are both consistent with a true trial *de novo.* The statutory statement that "The review shall be heard on the record *without requirement of printing*" we take to be a mechanical direction with a view to economy, and not a nullification of the previously granted authority to take additional evidence.

In short, the court concludes that when the legislature called for a trial *de novo* ("with or without a jury in accordance with the provisions of K. S. A. 60-238") it meant a trial where the issues of both fact and law would be determined anew.

The remaining question is whether the legislature may constitutionally impose such a review on the courts if it so desires. In expressing doubt on this question in *Jenkins* the court reviewed at some length cases in which we have held that the courts cannot on appeal try *de novo* decisions of an administrative nature, whether the appeal was under a special statute purporting to authorize such a review or under the general appellate jurisdiction statute, K. S. A. 60-2101 (*a*). In each of the cases relied on the function of the agency being reviewed was one which has traditionally been regarded, or was determined to be, either legislative, executive, or a blend of the two—in other words, a purely "administrative" function.

Thus in *Kansas State Board of Healing Arts v. Foote,* supra, the function was the licensing of a healing arts practitioner. In *Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239, it was the licensing of a child care home. *Lauber v. Firemen's Relief Association,* 202 Kan. 564, 451 P. 2d 488, and *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 205 Kan. 780, 473 P. 2d 72, both dealt with boards administering funds established for the benefit of public employees and their dependents. Both boards were, we said, administrative in character even when performing functions sufficiently "quasi-judicial" as to make their orders appealable under K. S. A. 60-2101 (*a*). Because of the administrative nature of the function being reviewed, a trial *de novo* was precluded in each of those cases by the constitutional separation of powers.

Other cases, not relied on in *Jenkins,* recognize the same principle, as a result either of the statute involved or of the constitutional doctrine. *E. g., Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P. 2d 515 (utility rate fixing); *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513 (zoning); *Goetz v. Board of Trustees,* 203 Kan. 340, 454 P. 2d 481 (pension benefits); *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 479 P. 2d 860 (disability benefits); *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P. 2d 147 (tax assessment and valuation); *Copeland v. Kansas State Board of Examiners in Optometry,* 213 Kan. 741, 518 P. 2d 377 (licensing of optometrist); and *City of Kansas City v. Board of County Commissioners,* 213 Kan. 777, 518 P. 2d 403 (incorporation of cities). Although we reach a different result in this case, we intend to cast no doubt on the correctness of any of the foregoing or similar cases, including those cited in *Jenkins.* They were, we are convinced, properly decided.

A distinction must be made, however, between those functions of an administrative agency which are "administrative" in nature and those which are judicial in nature in the sense that they could constitutionally have been entrusted to the courts in the first instance had the legislature so desired. This court had occasion to explore this distinction in depth in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P. 2d 966. In that case the issue was whether the statute authorizing the district court in a workmen's compensation case to try a case *de novo* on the record violated the constitutional separation of powers doctrine. In holding that it did not the court said:

". . . If the functions performed by the director (and his examiners) are essentially legislative or administrative, under *Lauber* the district court did not have authority to review the director's decision on the facts and substitute its judgment for that of the director. But if the director's functions are essentially judicial, the statute under consideration giving the district court authority to try the case *de novo* on the record to determine the facts and the law was constitutional, and the trial court did not err in denying the claimant's challenge to its jurisdiction. When courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test is whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative agency must make. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. [Citations omitted.]

"The classic statement setting out the abstract test to be applied by courts in distinguishing the judicial power from legislative power when examining administrative agencies was made by Justice Holmes speaking for the court in *Prentise v. Atlantic Coast Line*, 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67. He there said:

"'. . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. . . .' (p. 226.)

"In applying the tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer, board or agency which performs it, that determines its character." (206 Kan. at 178-9.)

After reviewing the historical precedent for judicial determination of workmen's compensation claims as a matter of original jurisdiction the court went on to say:

"It must therefore be said the functions now performed by the director under the Kansas workmen's compensation act historically were performed by the courts, and thus can truly be classed as judicial.

"Applying the functions of the director of workmen's compensation to the definition of judicial power given by Justice Holmes in *Prentis v. Atlantic Coast Line*, supra, we find that the director investigates, declares and enforces liabilities as they stand on past facts (the injury of a workman while engaged in the course of his employment) under existing laws (the workmen's compensation act)." (*Id.* at 180.)

*Gawith* was subsequently applied in *Union Quarries, Inc. v. Board of County Commissioners*, 206 Kan. 268, 478 P. 2d 181. There the issue was whether a determination of abandonment of a nonconforming use in a zoning case was legislative or judicial. Citing

*Gawith,* the court found that "abandonment" was a question traditionally dealt with by courts and that such a determination " 'declares and enforces liabilities as they stand on present or past facts' . . . and does not involve the formulation of policy normally classified as a legislative function. Such a determination is not a prospective endeavor, rather it looks back and is made on past facts, and therefore must be deemed a judicial function." (*Id.* at 274.) The result was that the district court had jurisdiction to conduct a *de novo* inquiry into whether the landowner had abandoned its nonconforming use.

The commission, in support of its position that its functions are not judicial, relies heavily and quotes at length from *Cedar Rapids, Etc. v. Cedar Rapids Commun. Sch.*, 222 N. W. 2d 391 (Iowa 1974).

In that case the Iowa supreme court found that the Human Rights Commission established by ordinance of the city of Cedar Rapids was not a "court" in the constitutional sense, so that it could only be created by the legislature. Rather, it was an administrative tribunal exercising quasi-judicial powers, and its creation was within the power of the city. The key to the holding was the commission's lack of power to enforce its orders through its own machinery, an essential attribute, the Iowa court said, of a true court. The commission could make orders, but was required to obtain the order of a regular court to enforce compliance.

But that case goes on to hold the ordinance creating the commission invalid because it was "inconsistent" with the Iowa civil rights act. The fatal inconsistency was the ordinance's failure to provide for judicial review commensurate with that provided by state law for actions by the Iowa state civil rights commission. At that time the Iowa code, § 601 A. 10, subsec. 6, provided as to appeals from the state civil rights commission:

"6. The hearing on appeal shall be tried in equity and shall be de novo. The court may receive additional testimony and may affirm, modify, or reverse the order of the commission."

As we read the *Cedar Rapids* case, while it holds that an administrative agency is not a "court," it does not say that a court may not in any case conduct a *de novo* review of an agency's decisions, even if they are of a judicial character. It was, in fact, the failure to provide a *de novo* review that proved fatal to the ordinance. (We note in passing that Rule 334 of the Iowa rules of civil procedure governing the supreme court's review of district court decisions provided that "Review in equity cases shall be de novo." Hence,

under Iowa practice, the *de novo* concept is carried even to the appellate court level.)

This court is convinced that whether *de novo* review may be had in the courts depends on whether the functions to be reviewed are essentially judicial in character. Whether they are or not is to be measured by the tests set forth in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* supra.

Applying the test of *Gawith* to the present case, the court is of the view that the commission's inquiry into the school district's alleged violation of the act against discrimination is of the type the courts have traditionally made, and was essentially judicial. It involved the receiving and weighing of evidence, the finding of facts, and the application of existing law to those facts to determine whether specific conduct of the defendant was unlawful. Courts and juries perform these functions every day.

The court therefore holds that the provision of K. S. A. 44-1011 requiring a trial *de novo* does not violate the separation of powers doctrine of the constitution, and is to be applied as written. A trial under that section will, however, be limited to those issues fairly raised in an application for rehearing before the commission.

As to *Jenkins*, the court concludes that it reached the right result insofar as it held that a motion for rehearing is a valid prerequisite to judicial review of a commission order. Since no such motion was filed in that case, the court correctly affirmed a dismissal of the appeal from the commission's order. However, the court is now convinced that its dicta as to the scope of judicial review of a commission's order found in paragraph 2 of the syllabus and in 212 Kan. at 99 were wrong. That paragraph and the corresponding portion of the opinion are disapproved.

The net result in this case is that the trial court properly conducted a trial *de novo* to determine anew whether the school district was guilty of an unfair employment practice in any of the three particulars found by the commission—those issues having properly been preserved for judicial review by a sufficient application for rehearing before the commission. Since the trial court's determination of those issues is not challenged on the merits it must be and is affirmed.

APPROVED BY THE COURT.

MILLER, J., not participating.

FROMME, J., concurring and dissenting. I concur in Syl. ¶ 1 and the corresponding portion of the opinion relating to exhaustion of administrative remedies. I dissent from that portion of the opinion relating to the scope of review of administrative orders which discards the doctrine of separation of powers.

In considering the scope of review question we should not forget the nature of the order of the Kansas Commission on Civil Rights (KCCR) with which we are dealing in this particular case. The commission found discrimination, ordered the teacher reassigned and forbade the further transfer of the teacher and his wife without commission approval. There was no dollar penalty or judgment assessed. The school district was merely ordered to correct the discriminatory practice. Such an order was in the nature of administrative action designed to carry out the legislative policy against discrimination assigned to the KCCR for administrative action.

The doctrine of separation of powers has long been a part of the law of Kansas. If this doctrine is no longer in tune with the changing law of Kansas it should be discarded in appeals from the orders of all administrative agencies. It should not be discarded piecemeal. If this court is to enlarge the scope of review of orders of administrative commissions and agencies it should be based on the nature of the order being reviewed and not on the overall nature of the functions of a particular administrative agency.

Under the doctrine of separation of powers it has previously been held that the legislature may not impose upon the judiciary the function of trying an appeal *de novo* (in the true legal sense) on review of orders of administrative agencies. (See *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 510 P. 2d 132, and cases in support thereof cited at page 97 of the opinion.) This court now disregards the doctrine and accepts the imposition of a jury trial *de novo* when reviewing orders of the KCCR.

The justification for such an abrupt departure from past precedent seems to be based entirely on the singular decision, *Gawith, v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 476 P. 2d 966. *Gawith* deals with the scope of review on appeal from a director's award in a workmen's compensation case. It hardly needs mentioning that the functions of the workmen's compensation director, determining liability under that act and awarding thousands of dollars in compensation for disabilities incurred by a workman on the job, are completely different from the functions of the KCCR. The

functions of the KCCR are directed toward minimizing unlawful discrimination against individuals in employment relations, public accommodations and in housing.

The scope of review of administrative orders as historically applied was iterated in the *Newman* case. Historically the review has been limited in Kansas to deciding (1) whether the administrative agency acted fraudulently, arbitrarily or capriciously, (2) whether its order is within the scope of its lawful authority, and (3) whether its order is supported by substantial competent evidence. It is generally understood that administrative agencies are created to dispose of the great mass of business in a particular area of legislative concern by informal and formal administrative process with judicial reconsideration available for the occasional case which is important enough to one of the parties to warrant the special values of judicial treatment. (Jaffe, Judicial Control of Administrative Action, p. 103.)

As I understand the present holding the district court is now being required to grant the party appealing from the administrative order a new trial. It may hear additional evidence and on request must afford the parties a jury trial on all issues raised in the application for rehearing filed with the KCCR. I assume the jury function will be limited to the determination of factual issues, whatever they may be.

It is true the scope of review statute in the present case (K. S. A. 44-1011) directs that appeals from orders of the KCCR be heard by the district court, that additional evidence may be introduced, that either party be granted a jury trial on request and that the trial be *de novo*. However, these legislative provisions are not so different from provisions for review of certain other administrative agencies in Kansas which have been restricted by this court to the usual three-fold scope of review.

On suspension or revocation of a driver's license by the Motor Vehicle Department of the State Highway Commission the order of suspension or revocation is subject to review in the district court. K. S. A. 8-259 (*a*) in pertinent part provides:

". . . The trial on appeal as herein provided for shall be a trial *de novo* and the licensee shall have the right of trial by jury upon demand therefor: . . ."

In *Lira v. Billings,* 196 Kan. 726, 414 P. 2d 13, the so-called trial *de novo* is limited by this court to "the reasonableness of petitioner's failure to submit to such test."

The State Board of Health is authorized to grant and revoke licenses for operating nursing homes. Orders of that board are subject to review in the district court. K. S. A. 65-504 (now 1974 Supp.) in pertinent part provides:

". . . Such an appeal shall be tried *de novo* and the court shall receive and consider any pertinent evidence, oral or documentary, concerning the order of the board from which the appeal is taken. . . ."

In *Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239, this review statute was considered by this court, the doctrine of separation of powers was recognized and review of the administrative order was limited to the traditional three areas of concern previously mentioned.

Other than *Gawith v. Gage's Plumbing & Heating Co., Inc.,* supra, (the workmen's compensation case) I can find no Kansas cases which have enlarged the scope of review on appeal from orders of administrative agencies and commissions. In all cases the findings of the commission or agency are held to be conclusive on the reviewing court if supported by substantial competent evidence unless the agency has acted fraudulently, arbitrarily or capriciously or unless the order is outside the scope of the agency's lawful authority.

See *Union Pac. Rld. Co. v. State Corporation Commission,* 165 Kan. 368, 194 P. 2d 939; *Lira v. Billings,* supra; *Bodine v. City of Overland Park,* 198 Kan. 371, Syl. ¶ 1, 424 P. 2d 513; *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶ 1, 436 P. 2d 828, 28 A. L. R. 3rd 472; *Rydd v. State Board of Health,* supra; *Lauber v. Firemen's Relief Association,* 202 Kan. 564, Syl. ¶ 3, 451 P. 2d 488; *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, Syl. ¶ 1, 479 P. 2d 860, 403 U. S. 914, 29 L. Ed. 2d 692, 91 S. Ct. 2240; *Powers v. State Department of Social Welfare,* 208 Kan. 605, 493 P. 2d 590; *Thompson v. Amis,* 208 Kan. 658, 661, 493 P. 2d 1259, 409 U. S. 847, 34 L. Ed. 2d 88, 93 S. Ct. 53; *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 212 Kan. 137, Syl. ¶ 2, 510 P. 2d 160; *Copeland v. Kansas State Board of Examiners in Optometry,* 213 Kan. 741, 742, 518 P. 2d 377. The majority opinion acknowledges and approves the holdings in these cases.

The rules stated by the majority to determine whether an administrative agency has performed a quasi-judicial function or an administrative function are easy to verbalize but hard to apply. All

administrative agencies and commissions have some functions which may be classified quasi-judicial and others which may be classified administraitive. For instance, the KCCR has powers and duties under K. S. A. 1974 Supp. 44-1004 which may be classified as administrative. It may adopt rules and regulations to carry out the provisions of the act. It may apply to the district court of the county where the respondent resides seeking enforcement of a conciliation agreement. It prepares and carries on a comprehensive educational program designed for use in the public schools. It may endeavor by conciliation and persuasion to eliminate discrimination. It may accept contributions and enlist the aid of outside organizations to prevent discrimination, and it may issue publications on its investigations and research in order to promote goodwill and minimize discrimination.

This court's opinion is overly broad in holding that the KCCR exercises a judicial function in determining whether specific conduct of a respondent constitutes an unlawful discriminatory practice. The act permits an investigation, informal conference and a conciliation agreement. If the commissioner after an investigation determines that probable cause exists for crediting the allegations of the complainant an informal conference may be held and the discriminatory practice complained of may be eliminated by conciliation. In such case the commission acts more in the nature of an administrative agency than a quasi-judicial agency. A judicial inquiry investigates, declares and enforces liabilities yet the KCCR must go to the district court to enforce a conciliation agreement. (K. S. A. 1974 Supp. 44-1004 [7].) In the present case conciliation was not possible so the KCCR held a formal hearing and issued its order but that does not change the nature of a proceeding by the commission which ends in a conciliation.

It is impossible for me to ascertain what there is about the order of the KCCR in this case which sets it apart from all other agencies and commissions of the state, except the Workmen's Compensation Director, and which justifies a trial *de novo* in the true sense. Other agencies do investigate present and past facts, they make decisions based upon such investigations, and their actions may be in the nature of a judicial inquiry. For instance, the State Board of Health investigates and inquires in order to determine whether present facts justify the issuance or revocation of a license to operate a nursing home. Yet such determination when made is subjected to a limited scope of review reserved for "purely" administrative agen-

cies. (See *Rydd v. State Board of Health*, supra.) The same is true of the various other agencies that grant certificates of public convenience and necessity to carriers, that issue driver's licenses, that determine public employee's retirement benefits, that determine welfare payments and that determine entitlement to relief funds. In all of these cases the ultimate decision by the agency is based upon an inquiry judicial in nature. The administrative agency has investigated facts, past and present, has declared the rights of the person, and then attempts to enforce the declared liabilities.

The present opinion of the court is also inconsistent with the long standing rule that a party appearing before an administrative body cannot produce his evidence piecemeal by producing part of his evidence before the administrative agency and then produce the balance on judicial review. (See *Strader v. Kansas Public Employees Retirement System*, supra.) By extending the scope of review in the district court to a new trial before a jury on all issues raised on application for rehearing and permitting additional evidence the rule in *Strader*, to which this court pays lip service, is no longer the law.

This court states that the record discloses the district court "did not limit its review to determining whether the commission's findings were supported by substantial evidence, but substituted its own judgment for that of the commission on what the evidence proved." This court then determines that the district court "did *not* find any discrimination on either grounds", and with this negative finding states "unless the trial court arbitrarily disregarded undisputed evidence" its decision must stand. It would serve no useful purpose to set forth all the evidence in this case in this dissent. Suffice it to say the majority opinion acknowledges that the district court's "findings of evidentiary fact were not greatly at odds from those of the commission." Assuming this to be true the district court would have been authorized to find the decision of the commission was arbitrary and unreasonable. Such a determination would be within the scope of review historically provided in appeals from administrative agencies. In fact this was the basis for the district court's decision as it appears in the journal entry of judgment prepared by the attorney for the school district and signed by the judge.

The majority opinion recognizes that some distinction must be made between the functions of the KCCR and those of other administrative agencies whose orders are subjected to a limited scope

of review. It attempts to do so by likening the functions of KCCR to those of the Workmen's Compensation Director. In my opinion this is like comparing apples to oranges. The functions of these two agencies are entirely dissimilar and in my opinion they make strange bedfellows.

One final matter deserves comment. The majority opinion seeks further support on the scope of review question by citing *Union Quarries, Inc. v. Board of County Commissioners,* 206 Kan. 268, 478 P. 2d 181. That is an action seeking a declaratory judgment on property rights and injunctive relief against interference with the property. It was not an appeal from an administrative agency decision and no scope of review question was presented in that case. It can have no application to our present case.

There is no sound basis stated in the majority opinion for the singular treatment of appeals from orders of the KCCR as compared to the treatment of all other appeals from the orders of other administrative agencies in Kansas. The opinion will add confusion to the law regarding scope of review and it will result in channeling a great mass of the business of the KCCR through the district courts of this state. The effect of the majority opinion will be to remove the power and authority to minimize discrimination from the KCCR and place the ultimate power and authority in the various district courts of this state. Discrimination will no longer be dealt with on a statewide basis. Attempts to minimize discrimination will be finally handled and determined by twenty-nine separate district courts in this state.

Therefore I respectfully dissent from that portion of the court's opinion covering the scope of review question.