(758 P.2d 226)
No. 60,700

GEORGE ANGLE, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

Petition for review denied September 23, 1988.

Opinion filed June 24, 1988.

*Rex G. Beasley* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for the appellant.

*James G. Keller*, of Department of Revenue, of Topeka, for the appellee.

Before BRISCOE, P.J., BRAZIL and DAVIS, JJ.

BRISCOE, J.: Plaintiff, George Angle, appeals from the district court's order upholding suspension of his driver's license for refusing to submit to a breath alcohol test pursuant to K.S.A. 8-1001 *et seq.* Defendant, Kansas Department of Revenue (Department), cross-appeals.

On April 5, 1986, plaintiff was involved in an automobile accident in Wichita. Officer Riddle of the Wichita City Police Department responded to the scene. Riddle testified he noticed the smell of alcohol on plaintiff and that plaintiff's speech was slow and drawn out. Riddle asked plaintiff if he had been drinking, to which plaintiff responded negatively. Riddle requested that plaintiff perform field sobriety tests. Plaintiff told Riddle that he might have difficulty performing the tests because of an inner ear problem.

Riddle administered three tests to plaintiff, including the stand and count test, the walk and turn test, and the horizontal gaze nystagmus test. The subject is assessed one point for each instance of noticeable difficulty experienced with the walk and turn test and the horizontal gaze nystagmus test. A grid is then referred to which, based on the score results, indicates whether the officer should request a breath test.

Riddle testified plaintiff did not keep his foot off of the ground for the entire period of the stand and count test, and at one point during the walk and turn test plaintiff lost his balance. Plaintiff was assessed one point on the walk and turn test.

The horizontal gaze nystagmus test is at issue on appeal. In this test, the subject focuses on a moving object such as a pen while the officer looks for nystagmus, the involuntary quivering or jerking of the eye, which is considered a sign of intoxication. The test includes three phases: smooth pursuit, maximum deviation, and 45-degree onset. The smooth pursuit and maximum deviation phases may be conducted in a single pass in front of the eyes. The object is held directly in front of the eye at a distance of about 16 inches, then slowly moved to the outside while the officer looks for nystagmus. This is the "smooth pursuit" phase. When the eye has followed the object to the "maximum deviation" from center, with no white on the outside of the eye showing, the officer holds the object still for two or three seconds and observes for nystagmus.

Plaintiff contends Riddle incorrectly administered the 45-degree onset phase of the test. This phase begins as the other phases but, instead of taking the eye to maximum deviation, the officer stops and holds the object at a 45-degree angle and observes for nystagmus.

In his testimony before the district court, Riddle testified he could not recall whether he performed all three phases of the test with one pass for each of the eyes. Counsel for plaintiff confronted Riddle with statements made in the DUI trial and in a deposition that the test had been performed in one pass of the eye. Riddle responded he did not recall but, if that was what the deposition said, he said it. Riddle also testified that, at maximum deviation, a little of the white portion of plaintiff's eye could be seen.

Officer Franks, a training officer, testified that it was improper to perform all three phases of the test with one pass for each eye, and further that at maximum deviation none of the white of the eye should show. Franks further testified that, if the object is moved out to the side and back to the center in three to four seconds for each eye and when the object is at the far extreme some white is still showing in the eye, the test would be accurate for the "smooth pursuit" phase only.

A subject may be penalized up to six points on the test—nystagmus observed in all three phases for each eye. Riddle testified he observed nystagmus in all three phases for plaintiff's right eye and at 45-degree onset and maximum deviation for his left eye. Riddle used the scores from these tests and referred to the grid or decision sheet. He testified that he had no personal knowledge of the theory behind the grid.

Following the field sobriety tests, Riddle requested that plaintiff take a breath test. Plaintiff refused and asked to speak to his attorney. Riddle testified he did not give plaintiff the written notices required by statute, but did tell him he could not speak to an attorney. Plaintiff was then placed under arrest for DUI and taken to the police station. At the station, Riddle again requested that plaintiff take the breath test. No notices were given.

When Riddle and plaintiff arrived at the station, Officer Baker was called to the booking desk. Part of her job was to run the intoxilyzer machine. Officer Baker testified she could not recall talking to Riddle about plaintiff. She testified that she knew plaintiff was there to take the test and that, even before she saw him, she assumed he was under the influence of alcohol. Riddle testified that he spoke with Baker about the case so she could fill out her report.

Baker then went through the implied consent advisory procedure, including warnings, with plaintiff and requested that he take the test. Plaintiff responded that he would not take the test and requested to speak to his attorney. The officers then completed the "Law Enforcement Officer's Certification of Refusal to Submit to Testing." The certification contains a line in which the officer indicates the reasonable grounds for his belief that the person is under the influence of drugs or alcohol by placing a check mark by possible reasons listed on the form. Riddle checked the following reasons on the form: odor of alcoholic beverages, and failed sobriety tests. He did not check slurred speech, bloodshot eyes, difficulty in communicating, or poor balance or coordination. No other reason was added in the space provided for that purpose. A "Notice of Suspension and Temporary Driver's License" was also issued pursuant to K.S.A. 1985 Supp. 8-1002.

Upon request by plaintiff, an administrative hearing was held pursuant to K.S.A. 1985 Supp. 8-1002(d). The officers were not

subpoenaed by plaintiff and, therefore, did not attend the hearing. The hearing officer found Riddle had reasonable grounds to believe plaintiff was operating or attempting to operate a vehicle while under the influence of alcohol or drugs; plaintiff was in custody or arrested for an alcohol-related offense at the time the test was requested; Baker presented the necessary notices; and plaintiff refused the test. In the "hearing notes," the hearing officer noted there was no issue as to the refusal to take the test. As to "reasonable grounds," the hearing officer noted that plaintiff said he would produce a witness who would testify there was no odor of alcohol about him, but that the witness did not attend the hearing. Under "other issues," it was noted that plaintiff contended the statute required warnings before making a request and, if a request is made without warnings, no subsequent warnings or requests can be made. Plaintiff also challenged the failure to subpoena the officers when he did not request it. The hearing officer found against plaintiff on these issues.

Plaintiff filed a petition for review with the district court, seeking de novo review pursuant to K.S.A. 1985 Supp. 8-259. The district court upheld the order of the hearing officer.

## Burden of Proof

Plaintiff contends the district court erred in ruling he had the burden of proof at the de novo review before the district court.

In *Lira v. Billings*, 196 Kan. 726, 731, 414 P.2d 13 (1966), the Supreme Court addressed the issue of burden of proof:

"We further hold that K.S.A. 8-259(a) requires a trial *de novo* of the particular question at issue, governed by the rules applicable to civil proceedings in district court, with the burden of proof on petitioner as the one seeking affirmative relief, and further, the exercise by the court of an independent judgment, with right of trial by jury under appropriate instructions if demanded by petitioner."

Plaintiff argues that, under 8-1001 as now amended, it is the Department and not the petitioner who must assert the affirmative issues. According to plaintiff, at the time of the *Lira* decision, the only issue at the hearing and at the de novo trial was the reasonableness of the driver's failure to submit to the test. Plaintiff argues it was proper for petitioner to be required to prove the affirmative issue, *i.e.*, the reasonableness of his conduct. However, plaintiff contends that, under K.S.A. 1985 Supp. 8-1002(d), the conduct of the officer is at issue, *i.e.*, whether the officer had reasonable grounds to believe the driver was operat-

ing a motor vehicle while under the influence of alcohol or drugs, and whether the officer had given the statutorily required notices to the driver. Therefore, plaintiff argues *Lira* is no longer applicable and the Department should bear the burden of proving these affirmative issues.

As regards burden of proof, we conclude the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, controls in this case. Plaintiff sought review of the administrative order suspending his license by filing a petition for review with the district court on May 7, 1986. K.S.A. 77-603(a) provides that, after July 1, 1985, the KJRA shall apply to all agencies *and* all proceedings for judicial review of agency actions not specifically exempted by statute. K.S.A. 77-621(a)(1) states: "The burden of proving the invalidity of agency action is on the party asserting invalidity." Here, plaintiff is asserting the invalidity of the Department's actions and, therefore, carries the burden of proof at the de novo hearing before the district court irrespective of any amendment to K.S.A. 1985 Supp. 8-1001.

### Cross-Appeal—Scope of Evidence

The Department argues the trial court should not have admitted evidence on the issue of whether the horizontal gaze nystagmus tests were administered correctly because the issue was not raised at the administrative hearing. Plaintiff responds that the court is not confined to the evidence raised at the administrative hearing. Plaintiff contends that, at all stages of the proceeding, the "reasonable grounds" of Officer Riddle were at issue.

The only indication of what issues were raised and evidence presented at the administrative hearing are the "hearing notes" attached to the order of suspension. Under the heading "reasonable grounds," the hearing officer noted that plaintiff stated he could produce a witness who would testify he did not have an odor of alcohol about him, but that the witness did not appear at the hearing. The hearing officer also noted the law enforcement officers were not subpoenaed by plaintiff and, therefore, did not appear. Nowhere in the notes does the hearing officer indicate the horizontal gaze tests were made an issue.

In order to determine what issues and evidence the trial court should consider, we must determine whether plaintiff is entitled to de novo review under the KJRA. When the petition for review

was filed on May 7, 1986, there was no right to de novo review of the license suspension. At the time plaintiff filed his petition for review, the KJRA confined judicial review of disputed issues of fact to the agency record, supplemented by additional evidence taken under the KJRA, except de novo review was provided in appeals of (1) workers' compensation orders; (2) Kansas Commission on Civil Rights (KCCR) orders; and (3) any agency order if violation is a crime punishable by fine exceeding $500 or imprisonment exceeding 6 months. K.S.A. 77-618. Subsequent to the filing of the petition for review and before the review was conducted, 77-618 was amended to allow de novo review of driver's license suspensions.

The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. *Davis v. Hughes*, 229 Kan. 91, 101, 622 P.2d 641 (1981). There is an exception to this rule when the change is merely procedural or remedial in nature. *Davis*, 229 Kan. at 101 (quoting *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582 [1979]). "Procedure" or "practice" has been defined as the mode or proceeding by which a legal right is enforced, that which regulates the formal steps in an action or other judicial proceeding. *Jones v. Garrett*, 192 Kan. 109, 114, 386 P.2d 194 (1963). Here, the change in law involves what evidence may be considered by the court in reviewing a driver's license suspension. Clearly, this does not involve a substantive right, but only a statement of the procedure to be followed on review. Further, 77-603(b) expressly provides that the KJRA creates only procedural rights and duties. We conclude the 1986 amendments should be applied retrospectively to provide plaintiff de novo review of his driver's license suspension under K.S.A. 1985 Supp. 8-259(a).

Our determination that plaintiff was entitled to a de novo review of the suspension order does not resolve the question of what issues and evidence the trial court could consider. The Kansas Supreme Court has restricted true de novo review based on the separation of powers doctrine.

"The Kansas Supreme Court has almost universally applied this doctrine of separation of powers to various appeal statutes providing for appeals from *purely administrative tribunals*, ruling that the court may not substitute its judgment on questions of fact for that of an administrative tribunal." *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 174, 476 P.2d 966 (1970); emphasis added.

When the subject of review is a purely administrative function, the district court is restricted to a more limited form of judicial review, even if the statute provides for de novo review. *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 552-53, 539 P.2d 1 (1975). The more limited scope of review is set out as follows:

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.' " *Olathe Hospital Foundation, Inc.*, 217 Kan. at 553 (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 [1968]).

The Supreme Court, however, has held in a limited number of cases that, when the subject of de novo review is a judicial function of the agency as opposed to a legislative function, the court may make independent findings of fact and law. *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 313, 674 P.2d 459 (1983); *Stephens v. Unified School District*, 218 Kan. 220, 226, 546 P.2d 197 (1975).

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Stephens*, Syl. ¶ 4.

"In determining whether an administrative agency performs legislative or judicial functions, the courts rely on certain tests; one being whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make, and another being whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body." *Stephens*, Syl. ¶ 3.

In applying these tests set forth in *Stephens*, we conclude the agency is performing a judicial function in driver's license suspension cases. Here, under the first test, the agency's inquiry is judicial in nature because it involves the investigation, declaration, and enforcement of rights as they stand on present or past facts and under laws as they already exist. Each of the issues on review involves the application of standards to past facts. The other two tests are whether the court could have been charged with the responsibility of making the decision the agency makes

and whether the function is one courts have been accustomed to perform. While the court in *Copeland v. Kansas State Board of Examiners in Optometry*, 213 Kan. 741, 743, 518 P.2d 377 (1974), cited *Lira v. Billings* in support of its conclusion that the revocation of a professional license is an administrative function, we conclude revocation of a driver's license under 8-1001 *et seq.* differs from revocation of a professional license. Here, the standards for revocation are clearly stated in a statute and involve standards of reasonableness which courts traditionally have applied in other contexts. Although this is a "licensing" case, that characterization is not determinative of the nature of the agency action here.

Having concluded the agency action here is "judicial" in nature, the trial court is not restricted to the more limited review exercised in the review of "nonjudicial" agency actions where new evidence is admissible as to the limited issue before the court on appeal; namely, the reasonableness and the legality of the order appealed from. *Rydd v. State Board of Health*, 202 Kan. 721, 732, 451 P.2d 239 (1969). In instances involving review of "judicial" agency actions where de novo review has been expressly recognized, the court has still limited the issues and evidence. In KCCR cases, the court is confined to those issues raised in the motion for rehearing and to an independent review of the agency record. *Stephens*, 218 Kan. 220. In workers' compensation cases, the statute expressly limits review to questions of fact and law as shown by the transcript of the evidence and proceedings as presented and introduced before the director. K.S.A. 1987 Supp. 44-556(a); *Gawith*, 206 Kan. 169.

Here, K.S.A. 1985 Supp. 8-259(a) contains no such limitations. No restrictions are imposed on review of the record and no provision for rehearing is made which could be used to limit the issues. We conclude, however, that plaintiff should be restricted to those issues raised at the administrative hearing because of the principles applied in *Nurge*, 234 Kan. at 316-17. First, statutes purporting to grant de novo review should be strictly construed. Second, even though this is a de novo review, the proceeding is still predominantly appellate in nature. If plaintiff may raise a completely new issue and produce evidence before the court not produced below, effectively the agency action is ignored and the proceeding is not truly appellate. We conclude it

was error for the trial court to consider whether the horizontal gaze tests were correctly administered when that issue was not raised at the administrative hearing.

From our reading of these cases addressing de novo review, the Supreme Court has not interpreted any statute to allow true de novo review in the sense of a new trial on facts and issues as though they had never been tried. Even under the de novo review recognized in KCCR cases, the court is restricted to those issues preserved in a motion for rehearing before the commission and to a review of the agency record.

Plaintiff argues the issue was raised at the administrative hearing because the issue of reasonable grounds was argued. This definition of issue, however, is too expansive. Any of the grounds for revocation specified by the statute could be challenged by a licensee with a variety of arguments. If the agency is not made aware of the argument at the hearing, it cannot truly be said that the court in the de novo hearing is reviewing the agency action.

### Substantial Competent Evidence— Reasonable Grounds and Statutory Notices

Plaintiff also contends there was not substantial competent evidence to support the trial court's findings that there were reasonable grounds to believe (1) plaintiff was driving while under the influence, and (2) that the statutory notices were given.

Specifically, plaintiff argues the requests of Officer Riddle, the officer at the accident scene, cannot serve as a basis for suspending plaintiff's license because Riddle gave none of the required statutory notices *and* did not have reasonable grounds to believe plaintiff was driving while under the influence (again challenging the horizontal gaze tests). Plaintiff also argues the requests of Officer Baker at the station cannot serve as the basis for suspension because, although she gave the necessary statutory notices, she did not have reasonable grounds to believe plaintiff was driving while under the influence.

We have concluded in the preceding issue that plaintiff is restricted in the de novo review before the trial court to those issues raised before the administrative hearing officer. Riddle certified that the reasonable grounds for his belief was the "odor of alcoholic beverages" and "failed sobriety tests." Plaintiff did

not challenge the horizontal gaze tests at the administrative hearing but did challenge the officer's reliance upon an odor of alcohol as a reasonable grounds for his belief. Plaintiff also raised the issue of whether the officer gave the oral and written notices required under K.S.A. 1985 Supp. 8-1001(f). Plaintiff concedes he did not dispute his involvement in a motor vehicle accident, and that he refused to submit to requested testing.

Following its de novo review, the trial court made the following conclusions of law:

"3. After viewing the scene of the motor vehicle accident, after observing that plaintiff has a strong odor of alcohol about him and that his speech was slow and slurred, and after observing Mr. Angle while performing the three (3) field sobriety or coordination tests, and after Mr. Angle [refused] to take the breath test, Officer Riddle had reasonable grounds to believe that the plaintiff was or had been operating or attempting to operate a motor vehicle while under the influence of alcohol. Officer Riddle had reasonable grounds to request Mr. Angle to submit to a breath test.

"4. Officer [Baker], when requesting plaintiff to submit to a breath test, acted upon her personal observations of plaintiff and information furnished her by Officer Riddle. Officer [Baker] had reasonable grounds for requesting Mr. Angle to submit to a breath test. Officer [Baker's] request was refused by Mr. Angle."

The trial court did not make a specific conclusion of law as to the statutory notices. It did, however, find that Baker understood plaintiff was turned over to her for the purpose of going through the implied consent procedure and that Riddle told her plaintiff had been arrested for DUI. Furthermore, the court found that Baker gave plaintiff the necessary notices.

K.S.A. 1985 Supp. 8-1001(b) provides that the law enforcement officer administering the test may act on the collective information available to law enforcement officers involved in the accident. Both parties assume this is the basis for the court's decision. However, the court's findings indicate it based its conclusion on Baker's personal observations and the fact that Riddle told her plaintiff was under arrest for DUI.

This court must determine whether there is substantial competent evidence to support the findings of the court. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 736, 697 P.2d 52 (1985). "Reasonable grounds" is not defined in K.S.A. 1985 Supp. 8-1001(b). It has been suggested that reasonable grounds must be defined as "probable cause." Gottlieb & Zinn, *An Analysis of Recent Changes in Drunk Driving Laws*, 3 Kansas Criminal Procedure Review 59, 60 n.10 (1986). The conclusion is based on

two grounds: (1) "reasonable grounds" is synonymous with definitions of probable cause given in Kansas decisions (see *State v. Giddings*, 216 Kan. 14, 531 P.2d 445 [1975]), and is synonymous with the common-law definition of probable cause, which the United States Supreme Court equates with the Fourth Amendment requirement; and (2) blood tests under the statute would be unconstitutional if not based on probable cause. *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). The second ground is significant because, under the statute, a blood test may be requested without an accompanying arrest. K.S.A. 1985 Supp. 8-1001(b).

A review of the record does not indicate any observations which Baker made to support her belief that plaintiff was driving while under the influence. She did testify that she knew Angle was there to take the test and she assumed he was intoxicated. There is no substantial basis to support a finding of reasonable grounds based on Baker's *personal* observations.

The court found that Baker's reasonable belief was also based on information conveyed to her by Riddle. Here, the record shows that Baker could not recall whether Riddle discussed the case with her, while Riddle testified he did discuss the case so that Baker could fill out her report. The Department argues that Baker could act under the provision of the statute which allows the administering officer to act on collective information available to law enforcement officers investigating the accident. K.S.A. 1985 Supp. 8-1001(b).

We conclude there is substantial competent evidence to support the court's finding that Riddle had reasonable grounds to believe plaintiff was driving under the influence.

Plaintiff argues the horizontal gaze test was administered improperly. As previously stated, this argument was not raised before the hearing officer. Riddle's conclusions regarding the horizontal gaze test were unchallenged before the hearing officer and should not have become an issue before the trial court. The unchallenged certification that plaintiff failed sobriety tests which included these horizontal gaze tests was evidence to support the trial court's finding that Riddle had reasonable grounds to believe that plaintiff was driving while under the influence.

But, even if we were to allow plaintiff's challenge of the

horizontal gaze tests, the record still contains substantial competent evidence to support the trial court's findings. Even though the testimony indicates the 45-degree onset phase of the horizontal nystagmus test was administered improperly, there was testimony by the police training officer that the smooth pursuit phase of the test was administered properly. As to the maximum deviation phase, the training officer testified it was possible maximum deviation could occur at a point where some of the white portion of the eye still shows, as was the case here. Therefore, even though the test was not conducted properly, some phases were conducted in a way that could indicate nystagmus according to the training officer's testimony.

Riddle also testified concerning facts which could serve as reasonable grounds, including the smell of alcohol about the plaintiff, his slow and slurred speech, and his loss of balance on the walk and turn test. While it is true the officer did not indicate all of these factors in his sworn certification, the smell of alcohol and the failed sobriety tests, which included the walk and turn test and the horizontal gaze tests, were identified.

If Riddle had reasonable grounds, could Baker act on this information? Clearly, if this information was communicated to her, she could. However, even if the facts were not communicated, she could act under the "collective information" provision of 8-1001(b). Plaintiff argues this section is analogous to the "fellow officer rule" in the area of warrantless arrest. This doctrine set forth in *State v. Clark*, 218 Kan. 726, Syl. ¶ 5, 544 P.2d 1372 (1976), allows an officer to act on the strength of a communication through official channels directing an arrest be made:

> "An arresting officer who does not have in his possession sufficient information to constitute probable cause may make a valid warrantless arrest if (1) it is shown that he acted upon the direction or as a result of a communication from another police department and (2) it is shown that the police, as a whole, were in possession of information sufficient to constitute probable cause."

According to plaintiff, there was no communication of Riddle's reasonable grounds to Baker, so under either rule she could not act under the collective information. We disagree.

It is not necessary that all of the information be communicated to the arresting officer. The focus is on all of the investigating officers as a whole. Courts have expressly held that, when an arrest is made on the basis of a radio message, the question of

probable cause is determined on the basis of the full information which caused the message to be sent, *not on the basis of the message alone. Clark*, 218 Kan. at 732. Here, Baker was directed to administer the implied consent procedure. Under either the "fellow officer" rule or 8-1001(b), it was proper for Baker to act.

## Conclusion

The court did not err in placing the burden of proof upon plaintiff as the one seeking affirmative relief from the administrative ruling against him. The trial court did err in considering evidence on the field sobriety tests (horizontal gaze tests) when this issue was not raised before the hearing officer. The record shows there is substantial competent evidence to support the trial court's findings that there were reasonable grounds to conclude plaintiff was driving while under the influence and that the necessary notices were given. The court correctly upheld the suspension of plaintiff's license.

Affirmed.