(856 P.2d 1357)

No. 68,462

J.F. LINCOLN, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, DIVISION OF VEHICLES, *Appellant.*

Opinion filed August 6, 1993.

*James G. Keller*, of Kansas Department of Revenue, of Topeka, for the appellant.

*William K. Rork*, of Topeka, for the appellee.

Before BRISCOE, C.J., LEWIS and PIERRON, JJ.

BRISCOE, C.J.: The Department of Revenue appeals the district court's decision reversing the Department's suspension of J.F. Lincoln's driver's license.

On June 2, 1991, Lincoln's car was stopped by a Kansas Highway Patrol trooper for failure to maintain a single lane of traffic. Lincoln was arrested after failing field sobriety tests. The trooper advised Lincoln of the implied consent laws, K.S.A. 8-1001 *et seq.*, through both oral and written notices. After Lincoln was duly informed of the implied consent laws, he consented to a breath test. The test indicated he had a breath alcohol concentration in excess of .10. The trooper certified these test results to the Kansas Department of Health and Environment (KDHE). He also certified that he and the testing equipment were certified by the KDHE and that the testing procedures used were in

accordance with the requirements of the KDHE. See K.S.A. 8-1002(a)(3).

Lincoln's test results triggered the suspension of his license by the Department, but he "appealed" the suspension by requesting an administrative hearing. See K.S.A. 8-1001(f) and 8-1002(g). A timely request for such a hearing temporarily extends a licensee's driving privileges. K.S.A. 8-1002(g). Lincoln also requested that the trooper be subpoenaed to testify at the hearing.

There is no record of the administrative hearing. According to the parties, at the administrative hearing Lincoln's counsel requested that the trooper produce the certification for the .10 known solution used to calibrate the breath testing equipment. The trooper did not know prior to the hearing that Lincoln wanted this certification and did not have the certification with him. The administrative hearing officer apparently found the testing procedures were reliable and that Lincoln failed the test, and suspended Lincoln's license for a year. Lincoln then appealed to the district court, contending among other things that, because there was no evidence presented by the Department of certification of the "standard solution" or ampoule used to test the breath testing equipment, which in this case was an Intoxilyzer 5000, the test results were unreliable. On appeal to the district court, the Department offered evidence of certification of the standard solution, but Lincoln argued failure to produce evidence at the administrative level prevented introduction of evidence at the district court level. The district court found in favor of Lincoln.

Both before the district court and on appeal, Lincoln limits the focus of his argument to whether the equipment used in testing was reliable. He challenges neither the trooper's certification to operate the equipment nor the trooper's compliance with the required testing procedures.

The trooper testified he followed the proper procedures in performing the test, that he used the known standard solution to calibrate the testing equipment, and that the solution is attached to the equipment itself. Information is posted on the equipment and on the bottle of solution to indicate what standard solution is being used. The trooper was taught during his training that the known solution is a .10 solution of alcohol and water. He testified that the solution he used to calibrate the testing

device had been certified by the KDHE to be a .10 solution. During the test sequence for Lincoln, the known .10 solution tested as .098 in the calibration check. The known solution is required by the testing procedures to calibrate within a range of .090 to .109. The trooper was instructed that no more than eight tests should be run·from a particular standard solution and that a record is maintained of the number of tests done using a particular sample. He testified that, if eight or more tests had been recorded, he would have changed the solution. If a calibration check had been outside the required limits, he would have performed another check and, if that check was outside the limits, he would have changed the solution. If a check using a new solution was outside the limits, he would use a different type of test. During the testing sequence for Lincoln, use of the solution to calibrate the testing device indicated the device was working properly.

On appeal, the Department contends the district court erred by effectively requiring that it prove the standard solution used to test the breath testing equipment was certified. In addition, the Department argues its proffer of the evidence at the district court level should have sufficed, especially in light of Lincoln's failure to provide notice to the Department prior to the administrative hearing that he intended to challenge the certification. Finally, the Department argues the implied consent law is not to be construed strictly against the Department. We need address only the first issue presented to resolve this appeal.

"The district court's standard of review in driver's license suspension cases is governed by K.S.A. 8-259(a), which provides for de novo review." *Zurawski v. Kansas Dept. of Revenue,* 18 Kan. App. 2d 325, Syl. ¶ 1, 851 P.2d 1385 (1993). In *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 763, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988), we determined that, because the Department is performing a judicial function in a driver's license suspension case, the district court may make independent findings of fact and law. This court then applies a substantial competent evidence standard of review when reviewing a district court's ruling in a driver's license suspension case. See K.S.A. 77-623; *Zurawski,* 18 Kan. App. 2d at 328.

When the licensee seeks judicial review of an administrative order, the licensee has the burden of proving the invalidity of the agency action.

"As regards burden of proof, we conclude the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, controls in this case. Plaintiff sought review of the administrative order suspending his license by filing a petition for review with the district court . . . . . K.S.A. 77-603(a) provides that, after July 1, 1985, the KJRA shall apply to all agencies *and* all proceedings for judicial review of agency actions not specifically exempted by statute. K.S.A. 77-621(a)(1) states: 'The burden of proving the invalidity of agency action is on the party asserting invalidity.' Here, plaintiff is asserting the invalidity of the Department's actions and, therefore, carries the burden of proof at the de novo hearing before the district court irrespective of any amendment to K.S.A. 1985 Supp. 8-1001." *Angle,* 12 Kan. App. 2d at 761.

In the present case, the court found the Department's failure to provide certification of the standard solution at the administrative hearing level amounted to failure to provide a foundation sufficient to allow admission of the test results. Although the court speaks of foundation in its journal entry, it also states the Department failed to prove that every step of the testing procedure was reliable.

Lincoln does not argue the standard solution was improper or incorrect. He simply argues the solution must be certified to guarantee the accuracy and the reliability of the equipment. He argues that, without a specific certification of the standard solution, there is inadequate foundation for admission of the breath test results. The question becomes whether such certification is necessary to support the hearing officer's admission of the test results.

K.S.A. 8-1002(a)(3) requires:

"With regard to failure of a breath test, in addition to those matters required to be certified under subsection (a)(2), that: (A) The testing equipment used was certified by the Kansas department of health and environment; (B) the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment; and (C) the person who operated the testing equipment was certified by the Kansas department of health and environment to operate such equipment."

Two Kansas cases are arguably relevant. *State v. Lieurance,* 14 Kan. App. 2d 87, 782 P.2d 1246 (1989), *rev. denied* 246 Kan.

769 (1990), involved a direct appeal by the defendant from his conviction of driving while under the influence. The defendant argued several points of alleged error concerning the results of the Intoxilyzer, including the following:

"Lieurance argues that the standard test solution used to ensure accuracy was not reliable because the deputy had no way of knowing once it was added to the machine that it was not used more than the maximum of fourteen times. In fact, the deputy testified that, every time the machine was used, the test was logged on a sheet to ensure that it was only used the proper number of times. Again, this procedure was within the deputy's personal knowledge and was substantial competent evidence that the trial court could rely on when it admitted the test results. Calling all officers with access to the machine would be unreasonable and probably impossible. Likewise, the certification of the test solution itself and the procedure for adding it to the machine were subjects of the deputy's testimony, within his range of knowledge, and presented substantial competent evidence for the trial court to rely on." 14 Kan. App. 2d at 92-93.

This case does not unequivocally establish that certification of the known standard solution is necessary to determine the overall reliability of the equipment.

In *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 576 P.2d 239, *rev. denied* 225 Kan. 843 (1978), Gruss was convicted of driving while under the influence. He argued on appeal that the test ampoule for the Smith Wesson 900A breath testing machine was not shown to contain the proper chemical compound. This court found the ampoule was shown to have been properly certified and that it was impossible to require more because, once an individual ampoule is opened for testing, it cannot be resealed. We also found that, because the ampoule was certified and such certification was on record, Gruss' allegation of error was without merit. 2 Kan. App. 2d at 134.

The legislature has expressly found that, for breath test results to be reliable, the testing equipment, the testing procedures, and the operator of the equipment must all be certified. The legislature has not included certification of the standard solution used to calibrate the equipment in its list of items that must be certified. This court cannot read in an additional certification for solutions used to calibrate breath testing equipment; such additions must be required by the legislature. Requiring certification

of the operator, the procedures, and the equipment itself prevents any serious variability or inconsistency in test results.

"A court has no right to enlarge the scope of the statute or to amend it by judicial interpretation." *Coe v. Security National Ins. Co.*, 228 Kan. 624, 629, 620 P.2d 1108 (1980). To lay a foundation for the admissibility of breath test results, the Department is not required to also establish certification of the standard solution used to calibrate breath testing equipment.

Reversed and remanded for further proceedings.