No. 85,705

Ronald L. Drake, *Appellant*, v. Kansas Department of Revenue, *Appellee*.

(32 P.3d 705)

Opinion filed October 19, 2001.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause and was on the brief for appellant.

*James G. Keller*, of Legal Services Bureau, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Abbott, J.: Appellant Ronald L. Drake brings this appeal under the Kansas Implied Consent Law, K.S.A. 8-1001 *et seq*. Drake appeals the Barton County District Court's decision upholding appellee Kansas Department of Revenue's order suspending his driving privileges for 1 year and asks that the decision be vacated. The case is before this court pursuant to a K.S.A. 20-3018(c) transfer.

Drake testified that, prior to his arrest, he drank four or five beers at Al's Drive-In, Great Bend, Kansas, between approximately 8 p.m. and midnight. On Saturday, September 19, 1999, Drake was arrested for driving under the influence. Officer Scott Bie-

berle, of the Great Bend Police Department, smelled the odor of an alcoholic beverage during the traffic stop and again at the sheriff's department. Drake admitted to the officer that he had ingested a few beers. On appeal, Drake does not raise the issue of whether the arresting officer had reasonable grounds to believe he was under the influence.

At the sheriff's department, Bieberle read the implied consent notices to Drake, and then asked him to submit to an Intoxilyzer 5000 breath test. In response to one of the notices provided, Drake asked to speak to an attorney. Bieberle said he could do that later. Drake then agreed to submit to the breath test.

What happened next is contested by the parties. Drake asserts that he blew into the machine, but Bieberle told him he was not blowing hard enough. Drake testified that "I blew into it, and he said you're not blowing hard enough, and I said that's as hard as I can blow into it . . . and I said I'll take it again if you want me to, and I took it again and the same thing happened." Bieberle's characterization, on the other hand, was that Drake "didn't blow into the Intoxilyzer." Bieberle testified that the Intoxilyzer emits a tone signal to show that a breath sample is entering the device. The tone never sounded during the time period when Bieberle allowed Drake to attempt to provide a breath sample. Bieberle stood right in front of Drake, holding the breath tube with the mouthpiece attached to it during the test. Drake testified he was actually blowing into the tube of the testing machine. Drake also stated that after the attempted test, he was not allowed to consult with an attorney or to seek independent blood alcohol testing.

Bieberle conceded that Drake asked to speak with his attorney and was not taken for independent testing. Bieberle testified that during the time when he was reading Drake the implied consent advisories, Drake asked about "the other test that he could take." However, Bieberle contradicted Drake's assertion that he was not allowed to speak with his attorney, stating that he advised Drake there was a pay phone on the wall that he could use to call his attorney.

The Intoxilyzer's digital LED reading came back as a " .000 deficient sample." Drake was not made aware of the test result.

Bieberle did not consider this deficient sample reading of .000 to be a completed test. Bieberle stated that in the past he had allowed persons giving a deficient sample reading with .080 to obtain independent testing. He testified that it was his understanding that the difference between a deficient sample with a .000 reading and a deficient sample with a number attached to it was that the number indicated that the person had introduced air into the machine. However, Bieberle admitted that the machine could read .000 deficient sample if someone who had not been drinking blew in it for a second. The machine does not indicate how much air has been introduced into it. Here, there is no question that Drake had consumed alcohol and could not have registered .000 if he blew into the Intoxilyzer.

After an administrative hearing on November 17, 1999, Drake's driving privileges were suspended by the Kansas Department of Revenue pursuant to K.S.A. 2000 Supp. 8-1002(d). Drake appealed the suspension in Barton County District Court pursuant to K.S.A. 2000 Supp. 8-259. Following a hearing, Judge Mike Keeley upheld the Kansas Department of Revenue's order of suspension. Drake timely appealed the district court's decision.

## RIGHT TO ATTORNEY AND TO SECURE INDEPENDENT TESTING

Drake contends that, under the facts of this case, the trial court's conclusions of law regarding K.S.A. 2000 Supp. 8-1001(f)(1)(J) and K.S.A. 8-1004 were in error in light of *State v. Chastain*, 265 Kan. 16, 960 P.2d 756 (1998). Both Drake and the Kansas Department of Revenue assert that this is an issue of law subject to unlimited or de novo review.

In a motor vehicle license suspension case, the standard of review used by the district court is set forth by statute. "In the case of review of an order of suspension under K.S.A. 8-1001 *et seq.*, and amendments thereto . . . [t]he action for review shall be by trial *de novo* to the court." K.S.A. 2000 Supp. 8-259. The standard for appellate review is likewise set forth by statute. "Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases." K.S.A. 77-623. The Kansas

Court of Appeals has held that, when reviewing a district court's decision in a motor vehicle license suspension case, a substantial competent evidence standard of review is proper. *Lincoln v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 635, 637, 856 P.2d 1357, *rev. denied* 253 Kan. 859 (1993). Accord *Zurawski v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 325, 328, 851 P.2d 1385, *rev. denied* 253 Kan. 864 (1993).

"Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent . . . to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 2000 Supp. 8-1001(a). In general, a person's motor vehicle license may be suspended for refusal to submit to testing if: (1) a person is arrested or taken into custody for operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs or both, or was involved in a motor vehicle accident or collision resulting in property damage, injury, or death; (2) before tests are administered, the person was given oral and written notices of the consequences of testing and refusal; (3) a law enforcement officer requested the person to submit to testing; and (4) the person refused to submit to testing. See K.S.A. 2000 Supp. 8-1002(a)(1); K.S.A. 2000 Supp. 8-1001. If a person refuses a test, the person's driving privileges will be suspended for at least one year. See K.S.A. 2000 Supp. 8-1001(f)(1); K.S.A. 2000 Supp. 8-1014(a).

If, however, a person complies with testing as requested, certain rights are triggered under the statute both for the State and for the accused. First, the State may use the test results against a person during any trial on a charge of driving under the influence. Second, "after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians." K.S.A. 2000 Supp. 8-1001(f)(1)(J); see K.S.A. 8-1004.

Here, Drake was arrested for operating a motor vehicle while under the influence of alcohol or drugs. He was taken to the sheriff's department where he was advised of the consequences of test-

ing and refusal, and he was asked to submit to an Intoxilyzer breath test. Bieberle testified that during the time when he was reading Drake the implied consent advisories, Drake asked about "the other test that he could take." Both Drake and Bieberle testified that Drake asked to speak with his attorney. Thus, Drake did not waive either of the rights granted to him under K.S.A. 2000 Supp. 8-1001(f)(1)(J).

The issue at the heart of this case is whether Drake's actions constituted a refusal to submit to testing. We, therefore, must examine the record to see whether substantial competent evidence exists to support the district court's findings in that regard.

The district court found that Drake "never provided a sufficient breath sample when he blew into the machine, or did not blow into the machine, whichever evidence you choose to believe, to provide a tone on the breathalyzer machine." Because Drake admitted to ingesting alcohol and had the odor of alcohol on his breath, but the machine recorded .000, the court believed this to be an indication that Drake did not introduce his breath into the machine. Therefore, the court ruled that Drake refused the breath test, was not entitled to additional testing, and upheld the suspension imposed by the Kansas Department of Revenue.

A. Failure to provide a sufficient breath sample.

" 'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, "substantial evidence" is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' " *In re Estate of Reynolds*, 266 Kan. 449, 461, 970 P.2d 537 (1998) (*citing Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 [1993]).

Here, the record establishes that Drake went through the motions of submitting to the requested Intoxilyzer test. At Bieberle's request, Drake agreed to submit to a breath test. Bieberle testified: "First, he said he wouldn't. Then he—after a short hesitation, he said he would take the test." Drake indicated that he attempted to introduce air into the machine two times. Drake testified that "I blew into it, and he said you're not blowing hard enough, and I

said that's as hard as I can blow into it . . . and I said I'll take it again if you want me to, and I took it again and the same thing happened." Bieberle testified the tone never sounded on the Intoxilyzer during the time period when he allowed Drake to attempt to provide a breath sample. The Intoxilyzer's digital LED reading came back as a ".000 deficient sample."

Substantial competent evidence exists under these facts to find that Drake did not provide a sufficient breath sample during the Intoxilyzer test. In Kansas, under *Chastain*, even if a person provides an inadequate breath sample, so long as he or she submitted to testing, that person retains the right to seek independent testing and to present proof of his or her physical inability to blow into the breath test device at a later time. "[A] person who provides an inadequate breath sample is still entitled to an independent test under the provisions of K.S.A. 8-1004." *Chastain*, 265 Kan. at 19. In addition, under the language of the K.S.A. 2000 Supp. 8-1001(f)(1)(J), so long as a person does not refuse to submit to testing, he or she has the right to consult an attorney. Here, Drake underwent the breath test, but did not provide a sufficient breath sample. In *Chastain*, this court found no merit in the State's assertion that a defendant's deficient sample cut off the right to independent testing. 265 Kan. at 19.

B. Failure to blow into the machine.

When referring to tests to determine the presence of alcohol or drugs, K.S.A. 2000 Supp. 8-1001(f) repeatedly refers to the requirement that a person "submit to and complete" one or more tests. K.S.A. 2000 Supp. 8-1001(f)(1)(J) states that "after the *completion* of the testing, the person has the right to consult with an attorney and may secure additional testing . . . ." (Emphasis added.) If Drake did not blow into the breath test machine, then the test procedure was never completed. In that situation, Drake would not have the right to consult with an attorney or to secure independent testing.

Drake testified he was actually blowing into the tube of the testing machine. He offered to take the test again after Bieberle told him he was not blowing hard enough. On the other hand, Bie-

berle's characterization of what happened, based on his knowledge of the machine, was that Drake "didn't blow into the Intoxilyzer."

Bieberle relied on the indications from the machine. He noted that the tone never sounded during the time period when he allowed Drake to attempt to provide a breath sample. In addition, the Intoxilyzer's digital LED reading came back as a ".000 deficient sample." Bieberle testified that it was his understanding that the difference between a deficient sample with a .000 reading and a deficient sample with a number attached to it was that the number indicated that the person had introduced air into the machine. The machine never indicates how much air has been introduced into it.

The Commonwealth of Pennsylvania places the burden of proof in regard to the introduction of air into a breathalyzer squarely on the defendant. In *Bureau of Traffic Safety v. Jones*, 38 Pa. Commw. 400, 395 A.2d 592 (1978), the court held that a defendant's testimony that she "attempted in good faith to blow into it" constituted legally insufficient proof that she was physically unable to take the test. 38 Pa. Commw. at 405. In *Brinkerhoff v. Bureau of Traffic Safety*, 59 Pa. Commw. 419, 430 A.2d 338 (1981), after the defendant, a 67-year-old man, repeatedly failed to introduce sufficient air into the breathalyzer, the court upheld the police officers' determination that this was a refusal to submit to the test. 59 Pa. Commw. at 421-22. The court held that "competent evidence in such a case requires supportive medical evidence of the defendant's incapacity." 59 Pa. Commw. at 422.

In *Chastain*, the arresting officer gave the defendant a breath test at the police station, but the defendant "was unable to blow a sufficient amount of air into the machine." 265 Kan. at 18. As a result, the machine registered a deficient sample with a .210 concentration of alcohol. The State argued there that under K.S.A. 1994 Supp. 8-1001(f)(2), a person's failure to provide an adequate breath sample constituted a refusal, with the result that no additional testing was allowed unless he or she could show the failure was caused by physical inability. This court disagreed, stating:

"While an accused who refuses the arresting officer's test may not be eligible for independent testing under K.S.A. 8-1004, an accused who submits to the

requested breath test but blows an inadequate sample retains his or her right under the provisions of K.S.A. 8-1004. Even though under the provisions of K.S.A. 1994 Supp. 8-1001(f)(2), the blowing of an inadequate sample may constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs, the opportunity for the accused to show such a medical condition for his or her inability may not be demonstrated until a later time. Thus, a person who provides an inadequate breath sample is still entitled to an independent test under the provisions of K.S.A. 8-1004." *Chastain*, 265 Kan. at 19.

The Kansas Implied Consent Law provides a remedy in the event a person is not given the reasonable opportunity to obtain independent testing. Under K.S.A. 8-1004, "[i]n case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence." In this case, the breath test results were never admitted as evidence of Drake's intoxication. Nevertheless, the Intoxilyzer reading of .000 was used by the district court as evidence that Drake did not blow into the machine. Under K.S.A. 8-1004, the district court erred when it considered the test result as competent evidence. See *State v. Gray*, 270 Kan. 793 , Syl. ¶ 2, 18 P.3d 962 (2001) (noting that if a person consents to requested tests, but additional testing is not allowed by police, suppression of any reference to testing is the proper remedy).

The district court's use of the test result constitutes harmless error, however. "[A]n error which does not prejudice the substantial rights of a party affords no basis for reversal of a judgment and may be disregarded." *Smith v. Printup*, 262 Kan. 587, 603, 938 P. 2d 1261 (1997). At the July 18, 2000, hearing, Drake was given the opportunity, but failed to present any evidence that his failure to blow into the Intoxilyzer was due to physical inability caused by a medical condition. The lack of evidence of a physical or medical condition that kept Drake from producing a sufficient breath sample, coupled with Bieberle's testimony that Drake "didn't blow into the Intoxilyzer" provides sufficient evidence to support the district court's conclusion that Drake willfully failed to blow into the breath test machine.

C. The ruling of the district court in favor of the Kansas Department of Revenue.

Drake argues that because he submitted to testing, but was denied the opportunity to exercise the statutory privileges granted under K.S.A. 2000 Supp. 8-1001(f)(1)(J), the order suspending his license should be vacated. His argument is unconvincing.

In *Chastain*, a person's failure to provide an adequate breath sample did not automatically constitute a refusal to submit to testing that would preclude that person from obtaining independent testing. Here, the district court failed to distinguish between a person who provides an inadequate breath sample and a person who willfully neglects to blow into the Intoxilyzer and, thus, fails to complete the requested test. "[A] trial court's reason for its decision is immaterial if the ruling is correct for any reason. [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997). As discussed, a test is not completed if a person willfully refuses to introduce air into the machine. Because the record contains sufficient evidence to conclude that Drake willfully failed to blow into the device, we must conclude that, under these facts, the requested breath test was never completed.

Thus, Drake's rights under K.S.A. 2000 Supp. 8-1001(f)(1)(J) were never triggered or compromised. If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision. *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999). The district court's ultimate decision to uphold the Kansas Department of Revenue's 1-year suspension of Drake's license was correct.

Affirmed.